[Civ. No. 45939. Second Dist., Div. Five. Feb. 17, 1976.]

HARVEY G. COOPER et al., Plaintiffs and Appellants, v.
AMERICAN SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

## Counsel

Harvey G. Cooper, Nathaniel S. Colley, Lipsig, Rosenfield, Temkin & Leff, Linley, McDougal, Meloche & Murphy, Horace Wheatly, Robert & Reilly, Byhower, Longley & Petherbridge and Nancy B. Reardan for Plaintiffs and Appellants.

Loeb & Loeb, Howard I. Friedman, Edward S. Labowitz, O'Melveny & Myers, Bennett W. Priest and Bertrand M. Cooper for Defendants and Respondents.

## Opinion

HASTINGS, J.—This is an appeal by Harvey G. Cooper and Steven Peter Sardanis, plaintiffs and appellants (plaintiffs) against American Savings & Loan Association, Victory Savings & Loan Association, Columbia Savings & Loan Association, and Home Savings & Loan Association, defendants and respondents (Savings & Loan Institutions, or Institutions) from an order of dismissal entered after the trial court

determined that plaintiffs had failed to prove the constitution of the plaintiffs' and defendants' classes as required by the Manual for Conduct of Pretrial Proceedings on Class Action Issues of the Los Angeles Superior Court (Class Action Manual).

## STATEMENT OF THE CASE

The original class action complaint was filed on March 3, 1969. A first amended complaint was filed on July 14, 1969. The amended complaint, as pertinent here, alleges that the plaintiffs' class consists of all persons who became borrowers on promissory notes secured by deeds of trust from all of the savings and loan associations located in California within the four years prior to the filing of the complaint. It contends that the late charge penalty provision in each of the notes is illegal and void as a penalty in violation of Civil Code section 1670. The complaint also alleges that the notes further contained "due on sale or encumbrance" clauses, and these provisions constitute a restraint on alienation in violation of Civil Code section 711. Plaintiffs seek declaratory relief, damages in the sum of $2 billion, and that the defendants be permanently restrained from enforcing any of the penalty, acceleration and prepayment provisions.

To better understand the trial court's disposition of this case, it is necessary to set forth in some detail the pretrial activities—or lack thereof—of the parties. The named defendants (Savings & Loan Institutions) were served on or about July 22, 1969. Time for filing responsive pleadings was extended by stipulation, and on or about February 9, 1970, plaintiffs filed an amendment to the first amended complaint. Answers by the Savings & Loan Institutions were filed on March 2, 1970, and on March 31, 1970, plaintiffs filed an at-issue memorandum. On or about April 5, 1971, plaintiffs, relying on the suggestions of our Supreme Court in *Vasquez* v. *Superior Court*, 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964], filed a motion for determination of preliminary issues which included the issue of whether there was a valid representative action stated. That hearing was continued from time to time by stipulation due to settlement negotiations, until approximately July of 1971, when it was ordered off calendar. The settlement negotiations broke down in January or February of 1972, and were never resumed. On April 6, 1972, Savings & Loan Institutions took the deposition of plaintiff Cooper. They sought to take the deposition of plaintiff Sardanis, but were unable to do so because his whereabouts was unknown to counsel. No depositions were taken by plaintiffs.

On April 3, 1973, the superior court adopted its Class Action Manual. On June 14, 1973, at plaintiffs' request, an informal conference took place in the superior court to which the class action determinations had been assigned. On July 24, 1973, plaintiffs addressed interrogatories to each of the named Savings & Loan Institutions. Responses were filed on or about August 14, 1973. Plaintiffs moved for an order requiring further responses to interrogatories on August 23, 1973.[1] On September 19, 1973, the trial court granted the motion to compel further answers as to certain interrogatories, but denied same as to others which plaintiffs claim were essential for determining the constitution of the two classes. By these denied interrogatories plaintiffs sought to find out approximately how many borrowers paid late charges, prepayment penalties, etc. over the years in question. All Savings & Loan Institutions responded that compilation of the information would require an enormous expenditure of time and money, and was too burdensome. The trial court stated that the denial was "subject to modification by the judge presiding at the class action hearing (particularly to the extent that information may be necessary to a determination of the class). . . ."

No further discovery efforts of any kind were initiated or pursued by plaintiffs in the trial court.

On September 13, 1973, plaintiffs filed a motion to sever the first cause of action for purposes of trial, and a motion to be relieved from complying with the superior court manual concerning class actions. These motions were denied on October 3, 1973.

On November 28, 1973, plaintiffs filed a motion seeking certification of the plaintiffs' class for hearing on December 28, 1973. On December 3, 1973, appellants filed a motion for a certification of the defendants' class for hearing on January 4, 1974. The two motions were orally argued at length. On January 16, 1974, the trial court filed its memorandum order which in substance held that the plaintiffs had failed to meet their burden of establishing an "ascertained class" for both the plaintiffs and defendants. The class action suit was dismissed, but plaintiffs were permitted to proceed on their own behalf against Savings & Loan Institutions.

---

[1] Plaintiffs, on that date, also moved for judgment on the pleadings or summary judgment on the first cause of action on the issue of late charges based on the decision of *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.*, 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]. The motion was denied.

## ISSUES

Plaintiffs state the issues on appeal as follows:

1. The court erred in ruling that ·the Class Action Manual was applicable to the within litigation. ,

2. Assuming the Class Action Manual is applicable, plaintiffs sustained the burden of proving the constitution of the plaintiffs' and defendants' class, and the court erred in dismissing the lawsuit.

3. Whether merely guidelines or rules of court, the Class Action Manual should be liberally construed.

## ARGUMENT

█ Plaintiffs argue that it was unwise and unfair for the trial court to impose the strict requirements of the class action manual on them since it was adopted approximately four years after the filing of the complaint. They rely on *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, which considered the retroactive effects of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) which became effective on January 1, 1971. In *Vasquez,* plaintiff's suit was filed prior to enactment of the CLRA, and the defendants contended that the Act contained "important protective procedures for defendants . . . ."; therefore, plaintiffs should be bound by those procedures. The Supreme Court rejected that contention, saying at page 818: "As to those cases in which the complaints were filed prior to the effective date of the act and those which do not involve practices described in section 1770, a plaintiff need not follow the protective procedures prescribed in section 1782 et seq."

The above rule is inapposite here. Plaintiffs, in their opening brief, quoted the foreword to the Class Action Manual which states: "This manual represents the first attempt, so far as we know, to implement the observation of the California Supreme Court in *Vasquez* vs. *Superior Court* (1971), 4 Cal.3d 800, at 820, that '. . . pragmatic procedural devices will be required to simplify the potentially complex (class) litigation while at the same time protecting the rights of all the parties.' " Shortly after *Vasquez* was filed in 1971, plaintiffs concede that they anticipated the suggestions in *Vasquez* and filed their "then-novel motion," to determine the issues later required by the Class Action Manual. Then from April 5, 1971 (the date of the motion to determine preliminary

issues) to July 24, 1973 (over four years from filing of the complaint), plaintiffs took little, if any, action to obtain the facts that would establish the number and characteristics of the class members. We are unable to determine from plaintiffs' brief the exact requirements of the Class Action Manual of which they complain. Clearly the law on April 5, 1971, stressed the importance of defining the class for notice purposes.[2] It appears plaintiffs suddenly realized the five-year period for commencing the trial was drawing to a close, and that they could not certify the two classes. They apparently hoped that a court order to the effect that the Class Action Manual did not pertain to their action would eliminate this requirement. In the declaration of Mr. Cooper in support of the motion he states: ". . . since this litigation must go to trial before March 3, 1974, we will, of necessity, have to make guesses at the size and composition of the class since we cannot afford to wait until all the discovery has been completed."

We do not believe plaintiffs were procedurally damaged or prejudiced by the court's ruling that the Class Action Manual was applicable to their action.

▉ (2) Plaintiffs next contend that, assuming the Class Action Manual is applicable, they state that they sustained the burden of defining the constitution of the two classes. Inasmuch as we agree with the trial court's decision that plaintiffs failed to sustain this burden as to the plaintiffs' class, we discuss their argument only on this issue. It is plaintiffs' position that section 427 of the Class Action Manual[3] requires only a reasonable estimate of the number of borrowers involved and their geographical location and this was furnished by them to the court. Their argument is as follows: Interrogatories mailed July 24, 1973, addressed to Savings & Loan Institutions sought to determine the

---

[2]*Daar* v. *Yellow Cab Co.*, 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732], was filed almost two years before plaintiffs' action. The court favorably cited rule 23 of Federal Rules of Civil Procedure which in many respects touches on procedural steps that were pertinent to plaintiffs' action. And in *Vasquez (supra)*, the court stated that the provisions of the CRLA should be utilized in the interest of efficiency. (See discussion, *infra.*)

[3]The pertinent provision of section 427 is as follows:

"1 Issue: *Constitution of the Class.* The party alleging existence of a class will submit one or more declarations which present facts describing in detail the composition of the class, including the following:

"(a) The approximate number of persons in the class. If there are sub-classes, the declaration also should describe each and set out the approximate number of persons in each sub-class.

"(b) The general geographical location (or locations) of the class members. If the class is not confined to California, the description will include those locations outside California where the class members are located."

number of borrowers paying late charges, penalties, etc. These interrogatories were not answered by all Institutions, and plaintiffs brought a motion to compel answers. In opposition to the motion, Institutions not answering claimed, among other things, "Such information has not been designed for retrieval purposes by any data processing or computer system . . . it would take in excess of 20,983 [4] man hours" to obtain that information.

Victory Savings and Loan Association responded as follows: "Defendant has no records from which the requested information can be ascertained. Victory, however, had 1,464 borrowers as of March 1, 1965, and 2,124 borrowers as of March 1, 1969." Subsequently, said response was amended substituting the word "loans" for "borrowers."

Plaintiffs used Victory's response together with the public annual report for 1969 submitted to the State Savings and Loan Commission to estimate the number of persons or members in plaintiffs' class. The substance of their declaration to the court was that the primary class of plaintiffs consisted of all of the borrowers of Savings & Loan Institutions, and that there were two subclasses of plaintiffs, namely (1) those borrowers who paid late charges, and (2) those borrowers who paid additional charges as a result of the sale or purchase of the real property securing the loans and/or penalties for the prepayment of their loans.

Plaintiffs estimated that there were approximately 349,100 members in the primary class, and that one-sixth of that total (58,000) were in the subclass who paid late charges and the same number (58,000) in the subclass who paid charges on the remaining penalty provisions.[5]

Plaintiffs requested the court to order notice to the members by newspaper publication in the several counties of the state. The court refused, because plaintiffs' data was based only on generalized estimates at best and not based on evidentiary facts. The court then found that it would have no way of determining, from these figures, which members should have direct mail notice.

The key issue here is whether the trial court abused its discretion in dismissing the action two months prior to expiration of the five-year

---

[4] This figure applied to Home Savings & Loan. The other Savings & Loan Institutions figures were less, but still substantial.

[5] Plaintiffs presented a detailed breakdown on how they arrived at these figures. They appear to be reasonably accurate. However, for the reasons stated *infra*, they still are inadequate for determining proper notice to the various class members.

dismissal period because plaintiffs did not sufficiently define and identify the members of plaintiff classes for notice purposes.

The answer to this issue is found in *Cartt* v. *Superior Court*, 50 Cal.App.3d 960 [124 Cal.Rptr. 376], a recent decision by this court that compared federal and California law on notice requirements in class action suits. Cited in the opinion was the federal rule as defined in *"Eisen IV"* (*Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140]) which requires individual notice to each member of the class. On pages 176-177 [40 L.Ed.2d on p. 748], the United States Supreme Court stated: "Petitioner further contends that adequate representation, rather than notice, is the touchstone of due process in a class action . . . We think this view has little to commend it. . . . Rule 23 speaks to notice as well as to adequacy of representation and requires that both be provided. Moreover, petitioner's argument proves too much, for it quickly leads to the conclusion that no notice at all, published or otherwise, would be required . . . . This cannot be so, for quite apart from what due process may require, the command of Rule 23 . . . requires that individual notice be sent to all class members . . . ." *Cartt* stated that rule 23 does not bind California courts. It did, however, recognize the need for either individual notice, or notice by publication in most class action suits. *Cartt* was a class action suit against an oil company that alleged that the class members were induced by false advertising to environmental considerations to purchase gasoline from defendant at five cents per gallon over the prevailing market price. The damages to each member were a few dollars at most; yet, if they prevailed the total recovery would run into six or seven figures. The trial court ordered individual notices mailed to about 700,000 persons who were credit card holders during the period in question. On appeal *Cartt* held that notice by publication would be adequate. The opinion outlines California law on notice as it evolved primarily from *Vasquez, supra;*[6] *Daar, supra; Chance* v. *Superior Court,* 58 Cal.2d 275 [23 Cal.Rptr. 761, 373 P.2d 849]; and *City of San Jose* v. *Superior Court,* 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701]. We add to this list *Home Sav. & Loan Assn.* v. *Superior Court,* 42 Cal.App.3d 1006 [117 Cal.Rptr. 485].

---

[6]*Vasquez* suggested utilization of provisions of the Consumers Legal Remedies Act in class action suits. It specifically cited section 1781, subdivisions (d) and (e) of the Civil Code, to the effect that if the cause is to be permitted as a class action the court may direct either party to notify each class member (subd. (d)), and the requirements of such notice, including a statement that the court will exclude the member notified from the class if he so requests by a specified date (subd. (e)). The court further stated that rule 23 prescribes procedural devices which a court may find useful. Rule 23(c)(2) directs "individual notice be sent to all class members who can be identified with reasonable effort." (*Eisen* v. *Carlisle & Jacquelin, supra,* at page 177 [40 L.Ed.2d at p. 748].)

*Home Savings & Loan* summarizes the primary reasons for notice. On page 1010 the court states: "A primary procedural question in a class action is, who are members of the class? *Prompt and early determination of the class is essential* because until the composition of the class has been determined defendants cannot tell what the action involves, and until members of the class receive notice of the action they will not be bound by any judgment in the action. Once the composition of the class has been determined, its members are entitled to appropriate notice of the pendency of a class action that will affect their interests. Notice is particularly requisite when those purporting to represent the class seek payment of substantial compensation from all members of the class in the event of success. After the members of the class have been properly notified of the action, they are required to decide whether to remain members of the class represented by plaintiffs' counsel and become bound by a favorable or unfavorable judgment in the action, whether to intervene in the action through counsel of their own choosing, or whether to 'opt out' of the action and pursue their own independent remedies, such as negotiation with defendants, initiation of their own action, or intervention in some other action." (Italics added.)

In *Chance, supra,* the amounts involved were substantial and the class action was opposed by some potential class members. The required notice was by registered mail or other like reliable method. In *City of San Jose, supra,* the plaintiffs sought damages of $500,000 for a class estimated at 733. The court noted the constitutional importance of notifying absent class members because of the desirability that any judgment be res judicata.

· In contrast to the above cases, *Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, though not involved with a notice issue, proceeded as a class action suit although there was no feasible method of assuring that all class members would receive notice. The reason was that individual members probably would not have maintained individual actions because each member's damages were so low. Questions as to the res judicata effect on the parties was minimal if not nonexistent. *Cartt,* in comparing *Chance,* et al. with *Daar,* said on pages 972-973: "The distinction with respect to the concern for the res judicata effect of the action in *Chance* and in *Daar* is notable. . . . Unlike in *Daar,* the class members in *Chance* were much less likely to abandon their claims, and, absent personal notice to assure that the matter would be res judicata as to the remaining class members, any advantages in the class action mechanism would be negatived by the likelihood that the issue would

surface again." *Cartt* then concluded: "This case is obviously way over on the *Daar* side of the spectrum. Therefore it is entirely appropriate—as the Supreme Court suggests—to distinguish 'between the maintenance of the suit and its binding effect on the absent parties.' (67 Cal.2d at p. 706.) The class is huge, the damages per member trifling and the financial burden of the notice ordered by the respondent court entirely out of proportion to its beneficial results when these are compared to the purely theoretical risks of a less expensive method of notifying the class."

■ From these opinions two clearly defined rules emerge. First, where members of a class have a substantial claim, individual notice is required because it is essential for them to decide whether to remain as members of the class and become bound by the rule of res judicata; whether to intervene with their own counsel; or whether to "opt out" and pursue their independent remedies. These decisions are even more important when other overlapping class actions are pending, such as here (discussed *infra*), that include the same cause or causes of action.[7] Second, when the membership of the class is huge, the damages are minimal, and res judicata and the other problems listed in the first group are insignificant, notice by publication is adequate.

■ Although future decisional or statutory law might modify these rules, they govern our decision here. Plaintiffs, just before jurisdiction of the trial court expired (five-year rule), requested certification of a primary class and two complex subclasses, and suggested notice by publication. Plaintiffs obviously realized individual notice was out of the question and the trial court immediately recognized the problem.[8] In

---

[7] In this respect California is in agreement with rule 23 as interpreted in *Eisen IV*.

[8] The court, in its order dismissing the action, stated:

". . . The classes must be defined and identified during the pretrial process so that the class members may be given proper notice of the pendency of the case. Without proper notice of the suit, a class member loses his chance to 'opt out' so that he will not be bound by the class action judgment. For many reasons, some people prefer not to be a party to any type of litigation.

"In our present case, plaintiffs' attorneys have advised the court that there are at least twelve to fifteen other 'late charge penalty' cases pending against various California Savings and Loan Associations. Because of the *Garrett* and the *Clermont* [*Clermont v. Secured Investment Corp.*, 25 Cal.App.3d 766] decisions, it is not unreasonable to anticipate many more suits in this area. If the named plaintiffs and class members in those other cases were not given proper notice of the case at bar so they can exercise their right to 'opt out' of this case, many serious injustices and legal complications could result. Due process for them could be destroyed.

"Definition and ascertainment of the plaintiff and defendant classes is also absolutely essential to the doctrine of res judicata. If plaintiffs prevail they certainly want to know exactly what defendants are bound by the judgment they obtain, which judgments may

both subclasses, there undoubtedly were members with substantial claims and members with minimal claims. Further, numerous other class action suits on the same issues were pending.[9] It was essential for the reasons stated that members with substantial claims should receive individual notice. The burden of furnishing the court with the necessary evidence to identify these members rested squarely with plaintiffs. The evidence furnished was clearly insufficient to meet this burden. We cannot accept plaintiffs' argument that notice by publication to the entire class was proper. Acceptance of this argument would place our stamp of approval on notice by publication in almost every situation, and would reward the plaintiff who seeks to avoid the work of identifying members entitled to individual notice (and the cost involved), or the dilatory plaintiff.

■ We have considered the possibility of permitting the trial court to order notice by publication to class members who fit within the *Daar* and *Cartt* classifications, and removing the others from the class without prejudice unless they specifically elect to file their appearance in the action. We have, however, rejected this approach for the following reasons: First, it unreasonably transfers a legal burden and responsibility placed on plaintiffs to the court. Second, it would be a highly speculative decision. The line of demarcation between nominal damages and substantial damages could be $100, $1,000, or some other figure, depending on the nature of the case. The evidence submitted in the present case was so general that the court had no guidelines for such a determination.

We conclude that the court did not abuse its discretion in dismissing the class action portion of the suit.

---

include substantial dollar damages. If defendants prevail they want the members of the ascertained plaintiff class to be bound and barred by the judgment.

"Another reason for needing ascertainment of the class involves the type of notice that the court may want to order. Only by knowing the approximate number and location of the class members can the court intelligently decide whether a personal notice to each member or publication of the notice is feasible, within reasonable economic limits and not in violation of due process."

[9]Plaintiffs, in their opening brief, state: "As of November 28, 1973, the date on which appellants filed their motion to comply with the issues contained in the class action manual, besides the within litigation, there were *at least fifteen other class actions pending* against various savings and loan associations in California on the issue of *late charges alone*, ten against the named respondents and five against other associations. There are many more now. In addition, there are a number of other class actions pending against savings and loan associations on the issues of the due-on-sale and prepayment penalty clauses as well as the impound accounts." (Italics in original.)

3. Plaintiffs' last contention is that the Class Action Manual should be liberally construed. The essence of their argument is that rules of procedure should expedite and facilitate disposition of causes according to their merits, rather than convert them into a means of obstruction. We have no quarrel with this rule, but plaintiffs cannot rely on it here. Our opinion has reiterated the need for proper notice under California and Federal law. This law, in general, was not foreign to plaintiffs when they filed their action. It was more specifically defined when they filed their motion for determination of preliminary issues on April 5, 1971. From that date, plaintiffs knew or should have known that they had the burden of furnishing to the court the evidence that would enable the court to constitute the classes for notice purposes. It is no excuse that plaintiffs were lulled into inactivity because settlement negotiations were pending. Because of Code of Civil Procedure section 583, subdivision (b) (five-year statute) attorneys know discovery matters must proceed expeditiously inasmuch as settlement talks can often fail.

The order dismissing the class action suit is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 28, 1976.