[Civ. No. 37611. First Dist., Div. Four. July 22, 1976.]

JEAN McGHEE, Plaintiff and Appellant, v.
BANK OF AMERICA, Defendant and Respondent.

[Civ. No. 37612. First Dist., Div. Four. July 22, 1976.]

HUSTON ABRAMS et al., Plaintiffs and Appellants, v.
CROCKER-CITIZENS NATIONAL BANK,
Defendant and Respondent.

[Civ. No. 37613. First Dist., Div. Four. July 22, 1976.]

PATRICK A. MANNERINO et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK, Defendant and Respondent.

444

---

**COUNSEL**

Nathaniel S. Colley for Plaintiffs and Appellants.

Robert A. Padway, William S. Mackay, Theodore Sachsman, Morrison & Foerster, James J. Garrett, Steven R. Dantzker, Brobeck, Phleger &

Harrison, David W. Lennihan, Kirtley M. Thiesmeyer and David W. Yancey for Defendants and Respondents.

Mamakos & Mallick and Lynn S. Carman as Amici Curiae.

## OPINION

**CHRISTIAN, J.**—Jean McGhee, Huston and Leola Abrams, and Patrick A. and Pamela J. Mannerino appeal from orders in their respective cases which result in the denial of certification of each case as a class action. In both *McGhee* v. *Bank of America,* 1/Civil 37611, and *Mannerino* v. *Wells Fargo Bank,* 1/Civil 37613, the trial court granted respondents' motions to vacate prior certification of the respective classes; in *Abrams* v. *Crocker-Citizens Nat. Bank,* 1/Civil 37612, the trial court denied Abrams' motion to certify the class.

The relevant facts in each case are as follows:

### McGhee v. Bank of America

On January 13, 1967, appellant McGhee executed a deed of trust to secure the payment of $60,000. The deed of trust was on a preprinted form which contained space to fill in the date of execution, the borrowing parties ("trustors"), and the location and description of the properties subject to the deed of trust. The deed of trust provided that McGhee would make monthly payments in addition to payments of principal and interest to Bank of America for the payment of taxes and insurance, and that "said accumulated funds will be released to [McGhee] for payment of taxes, assessments and insurance premiums, or may be so directly applied by [the bank], if [the bank] so elect."

Bank of America admitted having commingled the funds collected pursuant to this provision of the deed of trust, and also admitted having not paid any return to appellant for the use of the funds. Bank of America maintains that it is not the general practice of real estate lenders to pay interest or any other return on such impound accounts.[1]

### Abrams v. Crocker-Citizens Nat. Bank

The facts are stated in the prior opinion of this court, 41 Cal.App.3d 55, at page 58 [114 Cal.Rptr. 913]:

[1]See Civil Code section 2954.8 (Stats. 1976, ch. 25, § 1, eff. Jan. 1, 1977) providing for interest on impound accounts.

"On September 27, 1963, appellants borrowed the sum of $8,050 from respondent to finance the purchase of a home in Stockton. The loan was to be repaid over a 30-year period, and was secured by a deed of trust on appellants' property. The deed of trust requires appellants to pay, along with their monthly payment of principal and interest, advances to be accumulated by respondent to pay taxes and insurance premiums. The deed of trust requires respondent to 'hold such monthly payments in trust to pay such . . . premiums and taxes . . . before the same become delinquent.'

"The loan was insured by the Federal Housing Administration. The loan was applied for, completed, and entered into on forms (including the deed of trust) which were furnished pursuant to rules published by the Federal Housing Administration. Those rules, embodied in the loan documents, required respondent to collect, manage and disburse sums deposited for tax and insurance premium payments. Neither the application nor the note, nor the deed of trust securing the loan, called for interest on the fund arising out of respondent's holding of deposits for insurance premiums and taxes.

"Appellants commenced the repayment of their loan in 1963 and continued their payments thereafter. During the entire period of the loan, respondent has fully performed its obligations to collect and disburse tax and insurance deposits."

In addition, the deed of trust was a preprinted form (FHA Form No. 2104m) with blanks to be filled in with the name of the borrower as trustor, a description of the property, and the amount secured by the deed of trust. Crocker admitted that it never paid anything to appellants Abrams for the use of the funds in the impound account.

### Mannerino v. Wells Fargo Bank

On January 12, 1967, the Mannerino appellants executed a deed of trust to secure a loan of $17,700. The deed of trust form was identical with the form used in *Abrams,* and contained an identical "trust" provision for the establishment of an impound account for the payment of taxes and insurance. The loan was insured by the Federal Housing Administration. Wells Fargo denied having commingled any of the funds impounded for the payment of taxes and insurance, and also denied having used those funds for its own advantage.

Appellants contend that the court abused its discretion in not certifying the classes in each case.[2] ■ Before a class action may be maintained, there must be an ascertainable class with a "well defined community of interest in the questions of law and fact involved affecting the parties to be represented." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964].) An important factor to consider is where "absent a class suit, recovery by any of the individual [plaintiffs] is unlikely" and that "defendant will retain the benefits from its alleged wrongs." (*Id.,* at p. 715.) Once a cognizable class has been established, the criteria and procedure to be used in determining whether a class action shall be maintained are set forth in Civil Code section 1781, supplemented by reference to rule 23 of the Federal Rules of Civil Procedure. (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 821; accord *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 453 [115 Cal.Rptr. 797, 525 P.2d 701]; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 198-199 [112 Cal.Rptr. 144].) Four conditions must be met before a class action may be maintained: (1) it must be impractical to bring all of the members of the class before the court; (2) the common questions of law or fact must predominate over the questions affecting individual members of the class; (3) the representative plaintiffs' claims or defenses must be typical of those of the entire class; and (4) the representative plaintiffs must be able to protect the interests of the entire class. (Civ. Code, § 1781, subd. (b); see also Code Civ. Proc., § 382.)

In the present case, there is no doubt that there are ascertainable classes of the debtors of the respondent banks who have executed deeds of trust with impound account provisions identical to those of the representative plaintiffs, and that these classes have common interests as to whether those impound accounts constitute trusts for which respondents should be required to account. Moreover, there is no doubt that the members of each of the classes are numerous or that the claims of the representative plaintiffs are typical of the claims of other members of the classes. The questions raised on these appeals are whether appellants have established that common questions of law or fact predominate and that they can adequately represent other class members.

[2]For convenience, the decertification of the classes in *McGhee* and *Mannerino* will be referred to as a refusal to certify because the standard for refusal to certify a class or decertification of a previously certified class is the same. (See *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964].)

■ · The existence of a trust requires a clear intention to create the trust, although no particular language is necessary to manifest that intent. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 21, p. 5384; Rest.2d Trusts, § 12, com. g; 1 Scott on Trusts (3d ed. 1967) § 12.2, pp. 107-108.) The mere use of the words "in trust" by the parties is not sufficient alone to create the trust. (*Anderson* v. *Hagen* (1937) 19 Cal.App.2d 714, 719-720 [66 P.2d 168].) "[A]n express trust may arise even though the parties in their own minds did not intend to create a trust. As in the case of the making of a contract, so in the case of a trust, an objective rather than a subjective test is applied. It is the manifestation of intention which controls and not the actual intention where that differs from the manifestation of intention." (I Scott on Trusts (3d ed. 1967) § 2.8, p. 44; see, e.g., *Neel* v. *Barnard* (1944) 24 Cal.2d 406, 411-412 [150 P.2d 177].) ■ Where funds are deposited in a bank to be used for a specified purpose, rather than as a general deposit, the amount deposited "constitutes a fund which the bank is not authorized to use in its general banking operations." (*Bank of America Assn.* v. *California Bk.* (1933) 218 Cal. 261, 273-274 [22 P.2d 704]; see *Burket* v. *Bank of Hollywood* (1937) 9 Cal.2d 113, 116 [69 P.2d 421]; *Anderson* v. *Pacific Bank* (1896) 112 Cal. 598, 601 [44 P. 1063]; see also *Ennis-Brown Co.* v. *Richdale L. Co.* (1920) 47 Cal.App. 508, 510-511 [190 P. 1064]; 5 Scott on Trusts, § 530, at pp. 3680-3684.) This question of fact concerning the intention of the parties to create a trust was recognized in our prior decision in *Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at pages 59-60, and exists in each of the cases treated here.

■ Appellants and respondents dispute whether proof of the intent necessary to establish the existence of a trust must be made for each individual claimed by appellants to be a member of the class. If individual proof of intent is required, individual issues would predominate over common issues, and the class action device would not be appropriate; "[s]ubstantial benefits both to the litigants and to the court should be found before the imposition of a judgment binding on absent parties can be justified, . . ." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 810.)

In each of the three actions it is alleged that thousands of deeds of trust containing identical impound provisions were entered into between respondent banks and their customers who sought real estate loans.

"The mere fact that separate transactions are involved does not of itself preclude a finding of the requisite community of interest so long as

every member of the alleged class would not be required to litigate numerous and substantial questions to determine his individual right to recover subsequent to the rendering of any class judgment which determined in plaintiffs' favor whatever questions were common to the class." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 809; *Chance* v. *Superior Court* (1962) 58 Cal.2d 275, 285-286 [23 Cal.Rptr. 761, 373 P.2d 849].) The impound account provisions are all contained in preprinted form contracts which are arguably contracts of adhesion, i.e., "a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 882 [27 Cal.Rptr. 172, 377 P.2d 284]; see also *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 20 [92 Cal.Rptr. 704, 480 P.2d 320].)

"Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party. Defendants assert, however, that to establish the trust deed as a contract of adhesion plaintiffs must present individualized evidence showing the relative bargaining power of each borrower vis-a-vis American, the alternatives available to each borrower, and their knowledge of such alternatives.

"Defendants err in their assumption that proof of the adhesive character of the trust deed would necessarily require the individual testimony of each borrower. The terms of the trust deeds used by American and its competitors are matters of public record. Through the testimony of American's own officers plaintiffs may be able to prove American's bargaining policy and prowess relative to its borrowers. If that evidence discloses that the trust deed is adhesive as to virtually all members of the class, plaintiffs will not need to elicit individual testimony from each borrower." (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 877 [97 Cal.Rptr. 849, 489 P.2d 1113].) If the adhesive character of the deeds of trust can be proved by appellants, the deeds may appropriately be construed against respondents (*Abrams* v. *Crocker-Citizens Nat. Bank, supra,* 41 Cal.App.3d at p. 60); the issue of intention might then be provable against respondents without testimony

as to the intention of each member of the class of those individuals who have executed deeds of trust containing impound account provisions. Therefore, the common question of whether the deeds of trust are adhesion contracts should be determined; if that determination is adverse to the plaintiffs, decertification can then be considered if it becomes necessary to elicit individual testimony from each borrower as to his intention in executing his specific deed of trust. As the classes in *McGhee* and *Mannerino* were already certified, and respondents in each case are attacking those certifications, it is appropriate that those respondents, by the procedure described in *Vasquez* (4 Cal.3d at p. 821), bear the burden of proving that the contracts were not adhesive and that the certifications were thus improper. In *Abrams,* on the other hand, appellants were seeking class certification in the first instance, and thus must demonstrate that the contracts were adhesive as part of their burden of establishing the existence of commonality.

■ The remaining question is whether appellants will adequately represent the classes they seek to have certified.[3] Adequacy of representation depends on whether the plaintiff's attorney is qualified to conduct the proposed litigation and the plaintiff's interests are not antagonistic to the interests of the class. (*Wetzel* v. *Liberty Mutual Insurance Co.* (3d cir. 1975) 508 F.2d 239, 247, cert. den., 421 U.S. 1011 [44 L.Ed.2d 679, 95 S.Ct. 2415]; *Souza* v. *Scalone* (N.D.Cal. 1974) 64 F.R.D. 654, 658; see also *Hansberry* v. *Lee* (1940) 311 U.S. 32, 44-45 [85 L.Ed. 22, 61 S.Ct. 115, 132 A.L.R. 741]; *Johnson* v. *Long* (M.D.Ala. 1975) 67 F.R.D. 416, 418; *White* v. *Deltona Corporation* (S.D.Fla. 1975) 66 F.R.D. 560, 562; *Thompson* v. *T. F. I. Companies, Inc.* (N.D.Ill. 1974) 64 F.R.D. 140, 148-149.) There is no indication that appellants' attorneys are not qualified to act as attorneys for the class; neither is there any indication that the trial court considered appellants' attorneys to be lacking in ability. Appellants' claims are typical of the claims sought to be asserted on behalf of their classes, and there is no showing that appellants have any interests which would be antagonistic to those of the class.

■ Respondent Crocker-Citizens National Bank asserts that appellants Abrams are not adequate representatives due to financial inability to represent the class and conflict of interest. It is claimed that the Abrams are unable to pay the costs of giving notice to members of the class. But the trial court has discretionary power to specify the form of notice which will be required to be given to the members of the class by

---

[3]This issue is discussed only by respondent Crocker-Citizens National Bank in *Abrams* v. *Crocker-Citizens Nat. Bank,* 1/Civil 37612.

the class representatives. (*Cooper* v. *American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 285 [127 Cal.Rptr. 579]; *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 966-975; see *Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 861 [126 Cal.Rptr. 811, 544 P.2d 947]; compare *Eisen* v. *Carlisle & Jacquelin* (1974) 417 U.S. 156 [40 L.Ed.2d 732, 94 S.Ct. 2140].) There is no showing that an effective requirement of notice cannot be devised which the Abrams can comply with. Once the trial court determines what notice is to be given, if the class representatives are unable or refuse to finance the type of notice required, the trial court may subsequently determine that certification as a class action was not appropriate. (See *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 821.)

Respondent Crocker-Citizens National Bank argues that there are two potential conflicts of interest between appellants Abrams and their class. The first conflict of interest is that appellants' attorneys will, by virtue of appellants' inexperience, lack of knowledge, and lack of financial resources, become the true directors of the lawsuit on behalf of the class, rather than appellants as class representatives. "Dual representation" of a class by attorneys who become or are in fact the representatives of the class has been held fatal by federal courts to the existence of a class action due to conflict of interest. (See, e.g., *Graybeal* v. *American Savings & Loan Association* (D.C. 1973) 59 F.R.D. 7, 13-14.) But in California such dual representation, subject to the discretionary authority of the court to prevent overreaching, has been implicitly sanctioned since *Daar* v. *Yellow Cab Co.* (*Saxer* v. *Phillip Morris, Inc.* (1975) 54 Cal.App.3d 7, fn. 1 at p. 18 [126 Cal.Rptr. 327].)

Crocker Bank expresses concern that appellants Abrams will not adequately represent their class because financial difficulties may force them to settle their action on terms that would be unfavorable to other members of the class. But "a class action, once filed, may not be dismissed without court approval"; the trial court, in considering any request by appellants to dismiss the action can protect the interests of other members of the class. (*Marcarelli* v. *Cabell* (1976) 58 Cal.App.3d 51, 53 [129 Cal.Rptr. 509].) There is no showing that appellants will not adequately and fairly represent the interests of the class.

The orders in *McGhee,* 1/Civil 37611, and *Mannerino,* 1/Civil 37613, vacating certification of the classes are reversed. The order in *Abrams,* 1/Civil 37612, denying certification of the class is reversed. Purported appeals in *McGhee,* 1/Civil 37611, and *Mannerino,* 1/Civil 37613, from the denial of the motions to separately try the issue of liability and to

approve the form and manner of service of notice to the classes are dismissed for failure to discuss these issues on appeal. Appellants will recover costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

Petitions for a rehearing were denied August 20, 1976, and the opinion was modified to read as printed above. Respondents' petitions for a hearing by the Supreme Court were denied October 6, 1976.