PAUL E. HAMER *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* THE BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT #113, COUNTY OF LAKE, Defendant-Appellee and Cross-Appellant.

Second District   No. 76-356

Opinion filed September 12, 1977.

Paul E. Hamer, of Northbrook, for appellants, *pro se.*

Hall, Meyer, Fisher, Holmberg & Snook, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal involves a class action suit brought by Paul E. Hamer as representative of the class, on behalf of himself and all parents and guardians of children attending school in School District #113. Paul E. Hamer is both the sole class representative and the attorney representing the class.

The suit was brought in three counts. Count I of the first amended complaint prayed for a judgment declaring the rights and duties of the defendant school board relevant to the charging of fees for rental of textbooks and equipment and asked that the school board be required in the future to permit all qualified children to enroll and attend schools in the district without payment of any fees for the purchase or rental of any books, supplies or equipment incident to the curriculum and that the board be required to refund all such charges since 1970 and all charges of any kind for prior years since 1959, except textbook fees.

Count II is somewhat repetitious but invokes the equity powers of the court for an injunction to restrain the board "from depriving any children enrolled in schools within the District of textbooks or materials or supplies in the future for failure to pay any fees or to purchase any books, supplies or equipment incident to any portion of the curriculum or other recognized school activities." It also prays for an accounting "of the public funds used to purchase textbooks which were lent to children whose parents were unable to purchase them and for an accounting of all fees paid, beginning with the Fall semester of 1970 and each semester thereafter."

Count III prayed that a writ of mandamus be issued compelling the respondent to perform certain acts relative to the determination of which children should receive free textbooks; to conduct a meeting open to the public relative to such determination; to record the names of such children's parents, to compel the respondent "to promulgate rules and regulations as the basis for determining which children shall receive free texts"; to compel the respondent to furnish free texts, supplies and equipment to all children enrolled in the schools in the future; to refund to the petitioner "all moneys paid commencing with the Fall term of 1959 and continuing each semester thereafter," and for costs and attorney fees.

The trial court, on motion of the respondent school district dismissed count III and struck certain paragraphs of counts I and II with leave to file a second amended complaint. The plaintiff filed certain amendments to the first amended complaint. The defendant filed a motion for summary judgment, contending as a basis for such motion (1) that the claim for recovery of fees is barred by laches and the statute of limitations, (2) that the plaintiff does not represent a class, but only himself, (3) that the plaintiff lacks standing to complain as to expenditures made for textbooks for indigent students, since tax moneys were not used for such purpose, (4) that previous decisions, *viz., Hamer v. Board of Education* (1970), 47 Ill. 2d 480, and *Hamer v. Board of Education* (1973), 9 Ill. App. 3d 663, are *res judicata* as to the constitutionality of charging fees for textbooks and that the practices sought to be enjoined are within the statutory authority of the respondent School District.

After a hearing, the trial court granted the motion for summary judgment as to count III (petition for mandamus), and as to the class action aspect of counts I and II, leaving intact the individual claim of Paul E. Hamer for recovery of certain fees and charges for textbooks paid by him on behalf of his daughter during the 1970-71 school year. In its order granting the motion for summary judgment the court found: (1) that Paul Hamer had failed to notify any of the other members of the class he purported to represent, although they are identifiable and easily notified; (2) that Paul Hamer has a conflict of interest by reason of being both the representative of the class and the attorney for the class and that his interest as a member of the class is small and his possible fees as attorney are large, thus disqualifying him from acting as the sole plaintiff; (3) that the five-year statute of limitation applies to the transactions involving the purchase of textbooks and fees for books and equipment involving claims prior to 1965-66 and are therefore barred by the statute of limitations, (4) that the fees were paid and the books purchased voluntarily without protest except as to $18 which was paid under protest for the school year 1970-71 on behalf of the plaintiff's daughter.

Hamer appeals from that part of the trial court's order of August 21, 1975, dismissing the suit as a class action, denying leave to substitute another plaintiff, ruling that the five-year limitation of actions applies to the transactions in question and also the ruling that the fees in question were paid and the textbooks purchased voluntarily.

Two (apparently) oral motions of the plaintiff were denied in this order. One, an oral motion of the plaintiff to substitute another named plaintiff as class representative and to notice the alleged class at that time, and two, a motion for summary judgment for the plaintiff.

■■ The reason for denying the plaintiff's oral motion referred to in the order of August 21, 1975, to substitute another plaintiff and to notify the

members of the class, is not disclosed anywhere in the record, so far as we can find, however, the motion was not made until some three or four years after the filing of the original complaint and we may assume, as indicated in the defendant's brief, that it was not considered timely when made. The motion was made at the last possible moment in the litigation and under the circumstances we do not think it was an abuse of discretion to deny it. The possibility of enhancing the plaintiff's case through a new and hitherto undisclosed class representative who would take over the role of plaintiff, did not, apparently, seem to the court to justify the further delay it would entail. This is not a case of joinder of necessary parties in order to accomplish the ends of justice as provided for by section 26 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 26). In this case the motion was to substitute an entirely new plaintiff for the present plaintiff, Hamer. There was no evidence that such a person was at that moment available and willing to accept that role. There were no vested rights involved and the possibility of a new and proper class representative was only a conjectural matter at that point—some four years after the case began—and within the court's discretion as such to decide. It was a procedural matter at that point.

The plaintiff contends, however, that he was a proper class representative in any event and that the court erred in holding that he represented only himself and not the described class, merely because he failed to notify the members of the class. He contends that notice to the other members of the class is not a procedural requirement under the Illinois cases and cites *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, and *People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303. Neither case, however, is authority for the proposition that in Illinois a class action may be maintained by one individual on behalf of many others whose interests may be very divergent, without notice to any other members of the class, when such members are easily identifiable and reasonably accessible to notice. *Lehnhausen* was a taxpayers' suit in Lake County brought on behalf of all Illinois taxpayers to enjoin the certification of a tax multiplier of less than the prescribed 42% of assessed value. The contention was made by the State that the Lake County circuit court was not the proper forum for resolution of the questions presented in that case and that the action must fail because notice was not given to all 101 counties in the State, which were potential defendants. The court pointed out, however, that not all the taxing bodies in all the counties were necessary parties—the case presented by the class action suit was whether a State official had performed the duties required of him by the Revenue Act, and this would not require notice to every party, who might by leave of court, have a right to intervene. The *Lehnhausen* case is, therefore, not significant as to the question of notice required to other

members of the class in order to sustain a class action, which is the question in the case before us.

■■ In the *Equity Funding* case, there was a class of claimants designated as "fraud claimants" who were in addition to creditors and other individual claimants. It was contended by the defendant (insurers, investors and others with interests adverse to the fraud claimants) that proper notice was not given to certain absent members of the fraud claims' class, other than by publication. In the course of its discussion on this point, the court said:

> "Neither section 52.1 of the Civil Practice Act nor the requirements of due process as suggested in *Eisen* [*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140] requires individual notice to all members of the class in all circumstances." (61 Ill. 2d 303, 312.)

That general statement is not meaningful here. In the case before us no notice of any kind was sent or claimed to be sent to the other members of the class, although they were easily identifiable and accessible from the school records. The plaintiff makes the bland assertion in his brief, citing the *Equity Funding* case that "the trial court erred in dismissing the class action aspect of the suit because notice had not been given to the other members of the class, since under neither *Eisen* or our statute was notice required in the instant case." Since the instant case is one where individual notices would be required if they were ever to be required in any class action suit—because the school records make individual notice of the class members very simple—the plaintiff is apparently suggesting that since notice in class action suits is not required by statute in Illinois it is not required at all. While it is true that the immediate concern of the *Eisen* case was with Rule 23 of the Federal Rules of Civil Procedure, and we have no counterpart to that rule in our own practice, Rule 23 is in its turn, founded on considerations of due process and the Illinois Supreme Court has time after time asserted the need to comply with the fundamental concepts of due process in connection with class actions. Since all members are bound by a decree in a class action suit, the requirements of due process fundamental to the suit and basic to the requirements of due process are notice, where it is reasonably possible, and adequacy of representation. In the case before us it is obvious that there may be a serious division of opinion among the members of the class both as to the social desirability of the suit and its economic feasibility. Those persons who object to the suit have a right to be notified and to remove themselves from the suit or even actively intervene against it if they so desire. As to the aspect of notice, therefore, we conclude there was a failure to comply with the requirements of due process.

■■ There is, moreover, another aspect of due process in class action

suits which may be, and in this case clearly is, tied in with the question of notice. That is adequacy of representation. The classic case on this aspect of class action suits is *Hansberry v. Lee* (1940), 311 U.S. 32, 85 L. Ed. 2d 22, 61 S. Ct. 115, where the United States Supreme Court held that the defendants were not bound by a decree rendered in the prior class action suit because their interests had not been adequately represented in that suit. See also *Otto v. Alexander* (1943), 383 Ill. 482 and *Newberry Library v. Board of Education* (1944), 387 Ill. 85. In the latter case, the court said:

> "Members of a class may represent others of that class where the sole and common interest of the entire class is to assert or challenge a claimed right; but where the substantial interests of parties present in such a suit are not necessarily or even probably the same as the interests of those they seek to represent, such parties present cannot be said to afford that protection to absent parties required by due process." 387 Ill. 85, 96.

It is proper for us to inquire in this case, therefore, as to whether there is a substantial possibility that the alleged class representative will not adequately represent the class he invokes—parents and guardians of children attending the schools in School District #113, where the plaintiff's daughter attends. The plaintiff herein and sole class representative has sued the local school boards unsuccessfully twice previously raising policy questions similar to those he presents in the suit before us. Yet in this suit, he is not only the class representative, but he has elected to be such without notifying the other members of the easily identifiable class and he is the attorney who drew the complaint and is pursuing the litigation. Under these circumstances, the adequacy of his representation of the broad spectrum of the community enbraced within the phrase "parents and guardians of children attending school in the defendant School District" may justifiably be questioned. The trial court found that he had not notified any other members of the class and that his oral motion to substitute another class representative in his stead did not disclose the identity of such proposed representative. When, therefore, after years of unsuccessful litigation against the local school boards on similar issues, the plaintiff brings this new class suit and presents himself as the class representative, as well as its attorney, it is reasonable for the adequacy of his representation to be challenged.

This is not a typical class action suit such as a taxpayers' suit, a suit on behalf of the consuming public or a suit by the customers of a large retail store, bank or other establishment, where identity of interest may readily be assumed. The defendants in this case are the board members of the school district and are themselves members of the community and like all other members of the community their loyalties, their choices and their obligations are not always clear-cut. The considerations in making school

policy may be diverse and competing and intangible considerations may vie with more tangible ones in school administration, all of which must reflect the opinions of the general community. Thus, it appears to us great care must be used in judging whether the class representative or representatives in a suit of this kind adequately represent the class.

The issue here is not inferior education, unqualified teachers, unsafe schools, lack of moral standards, reckless extravagance, or some other fundamental issue. The suit charges none of these things which might unite the parents and guardians of children of the school community. The only broad issue raised is the question of free textbooks, etc. in the schools and since the constitutional basis for that issue has been twice before decided adversely to the plaintiff (*Hamer v. Board of Education* (1970), 47 Ill. 2d 480, and *Hamer v. Board of Education* (1973), 9 Ill. App. 3d 663) this suit comes down to annual fees and charges which the plaintiff believes it was not within the power of the school board to exact from the children's parents or guardians for the every day operation of the school.

It is true, of course, that the mere possibility of a conflict among the members of a class or a minority opinion against such class action, does not disqualify it as a class suit. This court approved a class suit in *Ross v. City of Geneva* (1976), 43 Ill. App. 3d 976, where it appeared that some 50 members of the class benefited rather than being exploited by the city's parking lot operation, from which arose the mandatory fees sought to be recovered in the class action. However, in that case notices were sent to the class members (owners of buildings within a certain business area) who numbered some 1100, and as the court said, page 982: "Although defendant has produced some 50 persons who, in one fashion or another, have indicated that they do not support this suit, the defection of a relative few does not destroy a class of 1100." In the case before us the court found no notices had been sent to any members of the class, hence there was no objective test as to whether the self-appointed representative of the class, or indeed the nature and purposes of the suit itself, were acceptable to the class. As we said above, where it is a matter of trying to recover overcharges for a commodity, illegal interest rates, unauthorized taxes, etc. a class suit for the recovery of such charges may logically be inferred to express the wishes of the class, but there is no such inference in a class suit of the nature we consider here. Here we deal with matters of policy—fiscal, administrative and social—and the representation must comport with the tenor of the community. Hence the lack of notice in such a suit fatally impairs it as a representative class action.

But there is another grave objection to this suit which is independent from but connected with the adequacy of the plaintiff's representation. That is the obvious and irreconcilable conflict of interest which stems

from the sole class representative being also the attorney of record and entitled to compensation for representing the class. The plaintiff argues that since he can represent himself in a lawsuit "he can represent a class as a mere nominee." But, he has not demonstrated in this suit by any evidence or pleading that he is a *nominee*—a nominee represents others by their direction or consent—here there is nothing to show that he had any contact with, let alone authority from, any of the class members, since he did not notify them. In some situations it might be assumed that the interests of the sole class representative were the same as those of the class members, but as we have observed above, the nature of this suit precludes any such assumption. First there is the negative impression created by the plaintiff's admission that class representatives are sometimes hard to come by and his last minute motion to substitute another, unspecified person for himself as a class representative. The fact that the motion came some four years after the initial complaint was filed suggests either some lack of enthusiasm in the community comprising the class, or its entire ignorance of the proposed suit. Hence the argument that the plaintiff was the nominee of the class is suspect.

In any event, however, it is clear that the plaintiff's own financial interest in the fees sought to be recovered was nominal—for instance, he only claimed \$18 for overcharges in the 1970-71 school year and the net judgment rendered in his favor was \$1.80. On the other hand, the aggregate fees and the textbook rental charges and alleged excess charges over a period of years throughout the district would amount to many thousands of dollars which would justify a considerable fee to the plaintiff. Moreover, while the issue is one we think was already settled by previous litigation—as cited above—if the plaintiff were to be successful in his attempt to get all rental charges for textbooks and all fees abolished and the books and equipment furnished free to all pupils, the school district's budget would have to be increased accordingly, thus increasing school taxes in the district. Thus it is plain that while the plaintiff would also suffer the increased taxes, he would be recompensed for his efforts as well as being reimbursed for the fees paid out, so that he would probably profit financially. On the other hand, those who would have their taxes increased might be worse off, on net balance, in the future as a result of this suit.

We have then both a lack of due process in failure to notify the other class members, a possible inadequacy of representation, and a conflict of interest in the merging of class representative and attorney in one individual. The plaintiff contends there is no doctrine in Illinois which precludes the class representative from also being the attorney for the class. While there is a dearth of cases on this point and the plaintiff here

appears to have acted as both class representative and attorney in the case of *Hamer v. Village of Deerfield* (1975), 33 Ill. App. 3d 804, this point was not raised or considered by the court in that case. In the recent case of *Barliant v. Houghton Mifflin Co.* (1977), 45 Ill. App. 3d 494, the court found there was a conflict of interest in the sole class representative also being the attorney for the class. The court noted that no Illinois court had specifically ruled on the propriety of a class being represented by a person acting in the capacity of both plaintiff and attorney for the class. In the Illinois case of *Hamer v. Village of Deerfield,* above referred to, and in *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, the point was apparently not considered by the trial court. In other jurisdictions the court, in *Barliant* noted, the authority is against allowing the plaintiff to act in such a dual capacity. The court stated:

"Two well-reasoned United States Court of Appeals decisions have concluded that a class is not fairly and adequately represented where the same individual attempts representation of the class both as plaintiff and as attorney. (*Kramer v. Scientific Control Corp.* (3rd Cir. 1976), 534 F.2d 1085; *Turoff v. May Co.* (6th Cir. 1976), 531 F.2d 1357.) Several United States district courts, including the United States District Court for the Northern District of Illinois in *Flamm v. Eberstadt* (N.D. Ill. 1976), 72 F.R.D. 187, have reached the same conclusion (see cases cited in *Flamm* at page 189) as did *Shibley v. Time, Inc.* (1975), 45 Ohio App. 2d 69, 341 N.E.2d 337.

Apart from two decisions referred to in *Flamm (Umbriac v. American Snacks, Inc.* (E.D. Pa. 1975), 338 F. Supp. 265, and *Lamb v. United Security Life Co.* (S.D. Iowa 1972), 59 F.R.D. 25), the only Federal case this court's research has located which did not disapprove of the plaintiff acting as attorney for the class is *Residex Corp. v. Farrow* (E.D. Pa. 1975), 20 Fed. Rules Serv. 2d 97. *Umbriac* and *Residex Corp.* are no longer persuasive precedents because they are inconsistent with the subsequent *Kramer* decision by the court of appeals for the circuit of which the *Umbriac* and *Residex* court is a part. *Saxer v. Phillip Morris, Inc.* (1975), 54 Cal. App. 3d 7, 126 Cal. Rptr. 327, and *McGhee v. Bank of America National Trust & Savings Association* (1976), 60 Cal. App. 3d 442, 131 Cal. Rptr. 482, also sanction the attorney-client relationship for which plaintiff in this case seeks approval. Both of these California decisions, however, rely on *Darr v. Yellow Cab Co.* (1967), 67 Cal. 2d 695, 433 P.2d 732, which like the Illinois *Perlman* and *Hamer* cases involved a lawyer who was acting in a dual capacity without the court passing upon the propriety of that arrangement. Thus,

the authority disapproving of a class-action plaintiff also representing the class as attorney of record is overwhelming." 45 Ill. App. 3d 494, 495-96.

■■ Whatever may ultimately become the majority opinion on this point in those cases where proper notice has been given to the other members of the class, indicating the same person is acting as both plaintiff and attorney in charge of the litigation, we are persuaded that it is certainly not proper where (1) no notices were given to the other class members who were readily identifiable that they were taken to be members of the class and that suit was brought on their behalf by plaintiff acting as their attorney and (2) the nature of the class suit in question is such as would logically create conflicts and differences among the members as to the desirability of the suit, either from a financial or a social viewpoint. Under the circumstances of this case, we hold that it was not proper for the plaintiff in this suit to act as attorney for the class.

For the reasons stated above we hold that there was a failure of due process in the bringing of this action as a class suit and we agree with the trial court's order dismissing the suit as a class action. In view of this ruling we do not consider it necessary to determine a further point argued at the trial—whether any tax moneys were involved in the issue raised by the plaintiff regarding the board's forbearance to charge indigent students for textbooks. The evidence indicated the textbooks given to indigent children were furnished out of a non-tax-related fund in any event, hence the plaintiff would have no standing to question that as a taxpayer.

The court's order of August 21, 1975, dismissing the class action, however, did not entirely dispose of this case, since the order left intact the individual claim of Paul E. Hamer for refund of charges for textbooks and fees paid by him in excess of what was authorized by statute. It is our understanding that this claim is only for the charges for the school year 1970-71 so far as Paul E. Hamer is concerned—that is the charges paid by him on behalf of his daughter, Mary Hamer, for that year. While not necessarily agreeing with the trial court's holding that any other charges for books purchased prior to 1965 were barred by the statute of limitations governing oral contracts, we consider here only the claim based on the books specified in the stipulation between the parties as to Mary Hamer's books purchased for the school year 1970-71. While the plaintiff refers to the charges for textbooks as a fee, it is evident from the testimony that his claim is based on an overcharge in the purchase price of these books. Count I is for a declaratory judgment but also that the court "refund to the plaintiff all fees which the plaintiff paid beginning with the Fall term of 1959, except textbook fees * * *." It would appear, therefore, that the plaintiff is making claim in his individual capacity for

overcharges on *books* only for the year 1970-71. As to the other "fees"[1] paid by Paul E. Hamer for other of his children, if any, since 1959, we regard this as an administrative matter within the authority of the school board to impose, since such incidental fees are not, so far as we are aware, governed by statute.[2] We therefore consider here only textbook charges— whether denominated "fees" or claimed as an excess purchase price for the school year 1970-71.

■■ There was considerable testimony on both sides relative to the charges for textbooks but it boils down to the question whether the school board had authority to add 15% for "handling charges" to the list price, plus shipping charges. The plaintiff contended there was no statutory authority for adding anything more than the shipping costs to the list price as shown by the publisher, citing section 28—8 of the School Code (Ill. Rev. Stat. 1969, ch. 122, par. 28—8) which provides:

> "School districts may purchase textbooks from the publishers at the prices listed with the Superintendent of Public Instruction and sell them to the pupils at the listed prices or at such prices as will include the cost of transportation and handling."

The school board contends that under the wording of this statute the board is entitled to advance the cost of school texts by 15% over the list price, plus transportation costs, inasmuch as 15% represents a reasonable handling charge which is authorized in the above-quoted language. While the trial court did not disagree with the contention that the board could add "reasonable" handling charges to the list price, plus transportation charges, it found that the charges actually made in the case of Mary Hamer exceeded what was reasonable. The court, therefore, voided the 15% "handling" charge for the two textbooks bought by Mary Hamer for the school year 1970-71, which amounted to 55 cents for the Spanish book and 75 cents for the mathematics book. In addition, the court refunded what it found was a duplicate charge of 25 cents each for a health book and a driver's education text. This totaled $1.80, for which the court gave judgment in favor of Hamer against the school district.

The school board in appealing this judgment argues that the increase of 15% over the list price, plus transportation costs, is reasonable based on actual costs, since their records show that the aggregate handling costs for distributing and selling the books was more than 15% of the total list price of the textbooks they handled during 1970. The trial court, apparently, did not accept this method of showing the charges for specific texts

---

[1] Apparently referring to standard charges on an annual basis for equipment, art supplies, towels, swim suits, locker padlock, etc.

[2] The only other basis we can see for a refund of these "fees" is the contention that such fees are constitutionally unlawful since the constitution mandates "free" schools. This contention as noted in the opinion has already been decided twice, adversely to the plaintiff.

purchased by Mary Hamer as being reasonable and therefore gave judgment for Hamer based on the 15% overcharge for textbooks, plus the duplication of charges for the health and driver's education texts.

The evidence is hard to resolve but we cannot say the trial court did not have a reasonable basis for its judgment. It is reasonable to believe, as stated by the plaintiff, that the State intended that the books would be sold more cheaply by the district than by a retail book seller, but a retail book seller can advance his prices only by 15% over the list price. When he receives the books as agent of the district he can charge only 10% more than the list price. The district was charging something more than 15% over list price, which was the maximum the retail dealer could charge, since the district added in transportation costs too. While the court did not sum up the basis for its judgment in a memorandum opinion, his order evidently reflected a belief that the 15% charge was not established as being reasonable as a handling charge in addition to the shipping costs. We are not inclined to say the court erred in this respect.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.