[Civ. No. 2053.    Third Appellate District.—May 17, 1920.]

ENNIS-BROWN COMPANY (a Corporation), Respondent, v. RICHDALE LAND COMPANY (a Corporation), Appellant.

[1] DEPOSIT—ADVANCEMENT ON PURCHASE PRICE OF CROP—ACCEPTANCE BY MORTGAGEE — LIABILITY FOR REPAYMENT OF EXCESS.— Where an advancement on the purchase price of a growing crop is paid to the holder of a mortgage on the crop with the direction that the money be applied to the purchase of said crop, and the mortgagee acknowledged receipt of the money for that purpose, such mortgagee becomes a voluntary depositary, within the meaning of section 1814 of the Civil Code, of the excess of the amount thus advanced over the amount needed for the purchase of the crop and is under a *duty to* return such residue to the depositor.

APPEAL from a judgment of the Superior Court of Butte County.    H. D. Gregory, Judge.    Affirmed.

The facts are stated in the opinion of the court.

J. Oscar Goldstein for Appellant.

V. L. Hatfield and W. H. Hatfield for Respondent.

BURNETT, J.—September 14, 1917, the Ennis-Brown Company entered into a contract with W. B. Linn & Son whereby the former agreed to purchase the Egyptian corn growing upon the land occupied by the latter and owned by them. The agreed price was fifty dollars per ton, "free on board boat," and it was stipulated that an advance payment of $4,500 should be made. At the time the crop was estimated at 320 tons, but it actually yielded 115,013 pounds, amounting at said price to the sum of $2,875.30. Plaintiff having advanced said sum of $4,500 was therefore entitled to the return of $1,624.70. The question in the case is whether the cause of action in favor of plaintiff for this amount is legally against said Linn & Son or defendant Richvale Land Company. On September 27, 1917, defendant wrote plaintiff stating in effect that the former understood that the latter had purchased the corn crop of Linn & Son and that said Richvale Land Company had a crop mortgage on said crop and would expect any advancement of the price to be made to said company. On October 1, 1917, plaintiff, not referring to defendant's letter of September 27th, wrote defendant as follows:

"Richvale Land Company,
    "Chico, California,
"Gentlemen:

"As per instructions from Mr. Axtell, we herewith enclose you our check of $4,500 to apply on purchase price of Egyptian Corn bought from W. B. Linn & Son. Kindly have Mr. Linn endorse check in your favor and this will keep the record straight at your end. Please acknowledge receipt of the check and oblige.
                              "Very truly,
                                    "ENNIS-BROWN COMPANY."

The next day defendant answered the letter, as follows:

"We acknowledge receipt of your check for $4,500 to apply on purchase of Egyptian Corn from W. B. Linn & Son. Mr. Linn will begin to thresh the first of next week.
                              "Very truly,
                                    "RICHVALE LAND COMPANY."

The foregoing correspondence shows the foundation for plaintiff's claim against defendant for the balance remaining after the purchase price of said corn was paid.

We appreciate all that has been said by appellant as to the essentials of a contract. Of course, the parties must agree upon its terms before it becomes a legal and binding obligation. A proposition made by one party but not assented to by the other is of no avail. These elementary principles need no discussion, but we are entirely satisfied that appellant has made a wrong application of them. We may admit that the parties herein might have adopted more apt language to express their intention; at least, they could have been more definite and explicit, but we must not expect such precision and accuracy as would characterize formal instruments deliberately prepared by a capable attorney. [1] However, by fair intendment and common understanding of the terms employed, the letter and the reply being considered together, the correspondence amounts to this: Plaintiff, having sent to defendant the sum of $4,500, directs that it be applied to a single and definite purpose, namely, the "purchase of Egyptian Corn bought from W. B. Linn & Son." There was no uncertainty therein. It was understood what purchase was referred to and what price was to be paid. This direction, of course, excluded the application of the money to any other purpose. This is according to a familiar rule of logic. The direction would not have been changed in effect if the plaintiff had directed that the money be applied "on the purchase of said corn *and used for no other purpose.*" The defendant accepted the money and agreed to use it for that purpose. It is true that there was no express declaration that "we agree to apply the money to that purpose," but this is necessarily implied in the statement, "We acknowledge receipt of your check for $4,500 *to apply on purchase of Egyptian Corn from W. B. Linn & Son.*" Would the case for plaintiff be any stronger if defendant had written: "We acknowledge receipt of your check for $4,500 and we will apply it on the purchase of Egyptian Corn from W. B. Linn & Son"? The acceptance of the money for a definite purpose carries the implication that it would be used for that purpose. This seems too plain to require argument. The money, therefore, having been accepted for a definite and specific object, and the purpose

having been accomplished, what is the obligation of the defendant as to the residue, which was not needed for the purchase of the corn? There can hardly be any difference of opinion as to that question. The residue belonged to plaintiff, and it was the legal and moral duty of defendant to return it to the owner.

We need not quibble as to the proper legal terminology to characterize the relation of the parties. In a general sense, though, it is proper to say that a trust was created by express agreement, and it imposed upon defendant the obligation to pursue the course we have indicated. More specifically stated, the Richvale Land Company became a voluntary depositary within the meaning of section 1814 of the Civil Code, providing: ''A voluntary deposit is made by one giving to another, with his consent, the possession of personal property to keep for the benefit of the former, or of a third party. The person giving is called the depositor, and the person receiving the depositary.''

As to the use to which the deposit may be put, necessarily the will of the depositor controls. However, the legislature, in section 1835 of the Civil Code, has recognized this limitation in the following language: ''A depositary may not use the thing deposited, or permit it to be used, for any purpose, without the consent of the depositor.'' Herein the only consent granted by plaintiff to defendant was to apply the money ''on the purchase of Egyptian corn bought from W. B. Linn & Son.'' The depositary, therefore, had authority to use it for no other purpose.

Appellant makes the mistake of supposing that the case involves a *general* deposit, whereas, we are dealing with a special deposit. It is special because it was limited to a specific and definite purpose. The title did not pass to defendant as it would have done if the deposit had been general in its nature. The deposit constituted a bailment with the title remaining in the bailor and the bailee acquired no right to make general use of the property. The distinction between the two kinds of deposits is clearly pointed out in *Anderson* v. *Pacific Bank,* 112 Cal. 601, [53 Am. St. Rep. 228, 32 L. R. A. 479, 44 Pac. 1063], and *People* v. *California etc. Trust Co.,* 23 Cal. App. 199, [137 Pac. 1111, 1115].

Appellant also claims that the trial court erred in allowing interest from October 31, 1917, instead of January 25, 1918.

when the demand was made for the payment of the residue. No doubt the general rule as to interest on deposits is correctly stated in *Anderson* v. *Pacific Bank, supra,* and *Barrere* v. *Somps,* 113 Cal. 97, [45 Pac. 177, 572], wherein it is held that interest is allowable from the date of demand. Herein, however, the court found on sufficient evidence that there was an actual conversion of the money on said October 31st; and section 3336 of the Civil Code permits the recovery of the interest from that time. Moreover, we are not furnished with a copy of the pleadings upon which the action was tried and we must assume that no issue was tendered as to this point. Indeed, we might go further in the assumption that it was admitted in the answer that a demand was made on said October 31st. It may be added that the reduction of the amount recovered would be inconsiderable if effect were to be given to appellant's contention in this respect.

The judgment is affirmed.

Nicol, P. J., *pro tem.,* and Hart, J., concurred.