DAVID and ROBERTA BRILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brill v. Commissioner
Docket No. 7679-77.
United States Tax Court
T.C. Memo 1982-300; 1982 Tax Ct. Memo LEXIS 447; 43 T.C.M. (CCH) 1542; T.C.M. (RIA) 82300; May 27, 1982. David Brill, pro se. Kevin C. Reilly, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency *448 in petitioners' Federal income tax for the year 1973 of $ 16,129.66 and an addition to tax under section 6653(a) [1] of $ 806.48. Due to concessions by petitioners, the issues remaining for decision are 1) whether petitioners underreported their gross receipts in the operation of a travel agency business in 1973 by $ 40,263.66, 2) whether petitioners have substantiated promotional expenses of $ 4,307 and travel and gift expenses of $ 2,530 under sections 162 and 274, 3) whether depreciation, insurance, interest and other expenses totalling $ 1,958.37 attributable to a car owned by petitioners are deductible business expenses under section 162 and 4) whether petitioners are liable for the addition to tax under section 6653(a). To facilitate the disposition of the contested issues, our findings of fact and opinion are combined. Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference. Petitioners, David and Roberta Brill, husband and wife, resided at Forest Hills, New *449 York, at the time they filed the petition herein. Petitioner David Brill operated a sole proprietorship known as Brill Tours during 1973 at Mount Eden Avenue, Bronx, New York. From November 1, 1973, through December 31, 1973, he maintained a second office of Brill Tours at Riverdale, New York. Brill Tours was a travel agency. It arranged both airline and steamship tours and gambling junkets. Underreported Income
In 1973, Brill Tours' books were maintained by Roberta Brill at petitioners' then home in Forest Hills, New York. Roberta Brill had no formal training in accounting, though she once had read a book on the subject. Originally, an accountant helped Mrs. Brill set up the agency's books, but it was Mrs. Brill who made all ledger entries based on receipts and information supplied to her by her husband. At the end of each year an accountant was called in to close the agency's books. Brill Tours kept its books on the cash receipts and disbursements method of accounting. When Brill Tours would receive payment for an airline ticket, steamship ticket or hotel reservation from a customer, all of the payment would be deposited in a checking account maintained by *450 Brill Tours. Under various contractual arrangements, petitioners were obligated to forward these funds, minus petitioners' commissions, to the airline, the Air Traffic Conference, the steamship company or the hotel within a matter of days. On its books, Brill Tours would record such a transaction as follows: "cash" would be debited the full amount of the customer payment; "commission income" would be credited the amount of commission to which petitioners were entitled; and "accounts payable" would be credited with the amount Brill Tours was obligated to forward to the airline, the Air Traffic Conference, the steamship company or the hotel. When Brill Tours eventually forwarded the funds to the appropriate third party, petitioners would credit "cash" in the amount forwarded and debit "accounts payable" in a like amount. Under this system, at the end of 1973, petitioners had a credit balance of $ 20,073.86 in their "accounts payable" -- i.e., petitioners had on hand in their bank accounts $ 20,073.86 which they were contractually obligated to pay over to third parties. These monies were not segregated from other money held by Brill Tours. On their 1973 tax return, petitioners *451 did not report any of this $ 20,073.86 as income. Another ledger account maintained by Brill Tours was an account entitled "Loans & Exchanges." At trial, Roberta Brill was unable to explain the purpose of this account. The account shows credits to Brill Tours in a total amount of $ 22,119.37 in 1973. Of these credits, $ 1,929.57 is accompanied by the entry "stock;" $ 150 by the entry R. Cohen on January 31 (matched by a corresponding $ 150 debit for R. Cohen that same day); $ 825 by the entry E. Bacher on July 31 (matched by a corresponding $ 825 debt for E. Bacher that same day); $ 580 by the entry "Mt. Eden;" and $ 18,634.80 by the entries "D.B." or "R.B." The credit entries for D.B. and R.B. are abbreviations for petitioners' names -- David Brill and Roberta Brill. On this ledger sheet, debit entries accompanied by the initials "D.B." amount to $ 13,217. There are no debit entries for "R.B." On their 1973 tax return, petitioners reported no Brill Tours income attributable to the credit entires on the "Loans & Exchanges" ledger. Brill Tours, interalia maintained separate ledger sheets for "Drawing a/c," "Capital a/c," "Notes Payable" and "Payroll." On April 21, 1975, petitioners, *452 both individually and doing business as Brill Tours, filed voluntary petitions in bankruptcy in the United States District Court for the Eastern District of New York. On their statements of all debts at the time, petitioners listed unsecured debts owed to numerous airlines and hotels. Most of these debts were listed as having arisen in 1974 or 1975. In his statutory notice of deficiency, respondent increased petitioners' 1973 gross receipts from Brill Tours by $ 40,263.66. Respondent arrived at this figure in part by treating all credits on Brill Tours' accounts payable ledger as gross receipts by Brill Tours and all debit entries on the accounts payable ledger as "monies paid for client's expense" (a reduction of gross receipts). The remaining amount of respondent's adjustment to gross receipts was occasioned by respondent's inclusion of all $ 22,119.37 of credit entries on Brill Tours "Loans & Exchanges" ledger as gross receipts and the subtraction of "transfers" of $ 1,929.57 from gross receipts. Respondent argues that his adjustments to gross receipts are correct because Brill Tours kept its books on the cash receipts and disbursements method and petitioners could not explain *453 what the entries in "Loans & Exchanges" related to (other than a $ 1,929.57 item associated with stock sales). Petitioners, on the othe hand, argue that the amounts remaining in Brill Tours' accounts payable at the end of 1973, representing funds collected by petitioners and not yet forwarded to the airlines, the Air Traffic Conference, steamship companies and hotels, were not income to them. In addition, petitioners maintain that the amounts in the credit column of the "Loans & Exchanges" ledger were not income of Brill Tours and that their nontaxable nature is "self-explanatory." On the issue of whether the funds held by petitioners, which they were contractually obligated to pay over to the airlines, the Air Traffic Conference, steamship companies and hotels, were income, we agree with petitioners. Funds received for this purpose did not constitute earnings received by petitioners under a claim of right and without restriction as to disposition. Broadcast Measurement Bureau,Inc. v. Commissioner,16 T.C. 988 (1951); Seven-Up Co. v. Commissioner,14 T.C. 965 (1950). We faced this precise issue in regard to travel agents in Foutz v. Commissioner,T.C. Memo. 1978-471, *454 where we came to the same conclusion. Unless such funds were embezzled in 1973 (which we do not understand respondent to argue), [2] we see no reason why petitioners should include such funds in their income.
In regard to the credits in the ledger sheet entitled "Loans & Exchanges," we also hold that such amounts were not income to petitioners in 1973. Though Roberta Brill at trial could not explain the purpose for which this ledger was maintained, it seems rather obvious from its face that it was not an account in which petitioners recorded income items. Of the credits on this ledger, $ 18,634.80 was from petitioners; of the debits on the ledger, $ 13,217 was to petitioners. Brill Tours was a sole proprietorship. There is no indication in the record nor does respondent contend that these amounts represent the proceeds of transactions which were part of the business of the sole proprietorship which produced gross income. Amounts put in and taken out of a sole proprietorship's accounts by its owners simply *455 do not result in income to the owners in the gross amount of money put in. Of the four remaining credit items in the "Loans & Exchanges" ledger not attributable to petitioners, respondent has conceded that one, denoted "stock," is not an income item. Two of the three other credit entries are accompanied by matching debit entries for the same person on the same day in the same amount. The natural inference is that such entries involved an exchange of some sort which somehow was washed through the books. It is hard to see why the credit entry of the two matching entries produces income and the debit entry is to be ignored. The one credit item for which there is no matching debit entry in the same amount that same day is a $ 580 credit from "Mt. Eden." In light of the fact that we have found that all other credit entries on the ledger were not income items and that the title of the ledger suggests inferentially that some sort of loan was involved, we hold that the $ 580 item also was not an income item. Promotional, Travel and Gift Expenses
On their 1973 Schedule C for their travel agency, petitioners deducted $ 4,307 as promotional expenses and $ 2,530 as travel and gift *456 expenses. In his statutory notice of deficiency, respondent disallowed the entire amounts of these deductions. Respondent argues that petitioners have not shown these amounts to be ordinary and necessary business expenses under section 162 or, if so, substantiated under section 274. We agree. The only evidence petitioners introduced to substantiate such expenditures were Brill Tours' general ledgers and its cash disbursements journals. These documents show amounts expended, dates of expense and payee, but include no information regarding business purpose of the expenses. Petitioners did not elicit any testimony on the subject of these items. Petitioners have clearly failed to meet their burden of proof under the strict rules of section 274(d). Accordingly, none of these expenditures are deductible. Automobile Deductions
On their 1973 Schedule C for their travel agency, petitioners deducted $ 1,376 as depreciation attributable to a car they owned during the year. Petitioners also deducted $ 112.37 for auto insurance, $ 300 for interest on an auto loan and $ 170 as parking fees (mostly parking tickets) attributable to the above-mentioned car. Respondent disallowed *457 all these deductions on the grounds that petitioners did not show that the car was used at all for a business purpose. Respondent asserts that the car was merely used for commuting to and from work by David Brill. Petitioners adduced little testimony on this issue at trial and what testimony they did adduce tends to support respondent's claim that the car was used primarily, if not exclusively, for commuting purposes. Commuting expenses are personal and do not entitle a taxpayer to business expense deductions. Commissioner v. Flowers,326 U.S. 465, 473-474 (1946). Since no business use of the car in 1973 was proved, [3] petitioners are not entitled to deduct any of their challenged automobile expenses. [4]
*458 In addition, we note that to the extent the parking fees were payments for parking tickets, such amounts were not deductible under section 162(f) which prohibits a business deduction for "any fine or penalty paid to a government for the violation of any law." Section 6653(a) Addition to Tax
In his statutory notice of deficiency, respondent asserted an addition to tax against petitioners on the grounds that part of their underpayment of income tax was due to negligence or intentional disregard of rules and regulations. Section 6653(a). Testimony at trial indicated that petitioners on their travel agency Schedule C attempted to deduct virtually their entire costs of living -- e.g. rent on their apartment, the costs of their car, the cost of their home telephone. Petitioners introduced no evidence to rebut respondent's determination, though on this issue petitioners bore the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure; Bixby v. Commissioner,58 T.C. 757, 791 (1972). Under such circumstances, petitioners are liable for the addition to tax. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year at issue.↩
2. We observe that the debts to the airlines indicated in petitioners voluntary petitions in bankruptcy were not, as a rule, incurred during 1973, the year before the Court.↩
3. We suspect that during the last two months of 1973, when petitioners maintained two Brill Tours offices, the car may sometimes have been used by David Brill to travel between his two places of business. The cost of any such trips would, of course, be deductible. Heuer v. Commissioner,32 T.C. 947, 953 (1959), affd. per curiam 283 F.2d 865 (5th Cir. 1960). Unfortunately, petitioners presented no testimony on this subject and there is no other evidence in the record from which we could even approximate the cost of such trips, if any were made. See Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930). Consequently, we allow no deduction for such unproved business use. 4. Petitioners argue that at least the interest deduction should be allowed even if their car was not used for business purposes. This would be the result if petitioners itemized their deductions. On their 1973 returns, however, petitioners did not itemize, and this potential interest deduction is therefore not allowable. See secs. 63 and 163.↩