In re Cheryl Ann WADA, Debtor.

FIRST DELAWARE LIFE INSURANCE CO., Appellant,

v.

Cheryl Ann WADA, Appellee.

BAP Nos. CC–96–1797 HTJ, CC–96–1918, and CC–96–2021.
Bankruptcy No. LA 95–38482 SB.
Adversary No. LA 96–01154 SB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 22, 1997.

Decided July 18, 1997.

---

2. This language is consistent with the language in the previous Order that granted an extension as to other leases.

**574**

Richard K. Kudo, Los Angeles, CA, for First Delaware Life Ins. Co.

Before: HAGAN, TCHAIKOVSKY [1], and JONES, Bankruptcy Judges.

### OPINION

HAGAN, Bankruptcy Judge.

### INTRODUCTION

■ First Delaware Insurance Co. ("Appellant") appeals an order of the bankruptcy court discharging a debt owed to them by Cheryl Wada ("Debtor"). The Debtor did not file a brief.[2] We conclude the court erred in finding the debt dischargeable and reverse and remand.

### FACTS

In 1992, the Appellant sought the Debtor's services in arranging travel, lodging and dining accommodations for a conference and workshop for approximately 70 to 80 of its independent sales agents and their guests in

San Francisco, California. The Debtor was doing business as "Uniglobe Carriage Travel." The Appellant personally knew the Debtor since she was the past president of First Delaware's sister corporation, Executive Life Insurance Company.

The Appellant advanced a total of $119,400 to the Debtor in three separate payments by check: $30,000 on February 14, 1992, $10,000 on May 28, 1992, and $79,400 on July 16, 1992. According to Ira Gottshall ("Gottshall"), First Delaware's former president, the Appellant and Debtor had an oral agreement that any funds advanced would be returned if the Appellant canceled any of the anticipated travel and lodging plans, absent any non-refundable deposits made to secure reservations.

In September 1992, the Appellant canceled the seminar and workshop and made demand on the Debtor for a full refund and return of the monies previously advanced less any legitimately incurred cancellation charges and non-refundable deposits. In December 1992, the Debtor refunded $34,000 to the Appellant. The Debtor claimed she could not refund the balance because she had incurred non-refundable cancellation charges with airlines, hotels, and other things.

In July 1993, Gottshall called one of the airline carriers supposedly holding a "non-refundable deposit" and discovered the Debtor had never made any deposits on behalf of the Appellant. When Gottshall confronted the Debtor about the situation, she admitted she had lied about the non-refundable deposits and had kept the remaining $85,400.00. The Debtor then made payments to the Appellant and reduced the balance from $85,400.00 to $59,374.80, the amount sought by the Appellant to be non-dischargeable.

On November 2, 1995, the Debtor filed a petition for relief under chapter 7, title 11, United States Code.[3] January 25, 1996, the

1. Hon. Leslie J. Tchaikovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. The Panel will decide the case based on the Appellant's brief and the record. Failure to file a responsive brief does not preclude an appellee from prevailing on appeal. *Quarre v. Saylor (In re Saylor)*, 178 B.R. 209, 212 (9th Cir.BAP 1995) *aff'd*, 108 F.3d 219 (9th Cir.1997); *Cossio v. Cate (In re Cossio)*, 163 B.R. 150, 154 (9th Cir.BAP 1994), *aff'd*, 56 F.3d 70 (9th Cir.1995).

3. Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all references

Appellant filed a complaint to determine non-dischargeability under 11 U.S.C. §§ 523(a)(2) and (a)(4). The Debtor failed to respond to the complaint and default was entered on March 5, 1996. The Appellant filed a motion for entry of default judgment on May 21, 1996, alleging the Debtor had committed defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The trial court set the hearing for July 30, 1996. At the hearing the court tentatively denied the motion for entry of default judgment after finding no evidence of contemporaneous intent to commit fraud pursuant to section 523(a)(2).[4] The court granted the Appellant a two-week continuance to produce such evidence.

At the August 14, 1996, hearing, the Appellant chose not to argue non-dischargeability pursuant to section 523(a)(2), and instead argued the Debtor embezzled the funds. The court found the Appellant provided no evidence of that assertion, stating:

> I would expect to see a written agreement between the Debtor and the plaintiff imposing an obligation on the Debtor to keep those funds in a separate account. Either that or some law providing that. And absent one or the other of those, sir, it looks like this is a simple breach of contract.

The court also found the Appellant failed to show the Debtor was rightfully in possession "of funds belonging to another. And you haven't shown that they belong to another." The court therefore concluded the Debtor was the owner of the funds and that no embezzlement or fraud had occurred. The court concluded that the Debtor's misappropriation of the funds constituted a mere breach of contract, and was a dischargeable debt.

The court denied the Appellant's motion for entry for default judgment, found the debt dischargeable, and entered judgment in favor of the Debtor. The order denying motion for entry of default judgment and granting judgment in favor of the Debtor was entered on November 4, 1996. This appeal followed.

## ISSUE ON APPEAL

Whether the court erred in determining the debt was not excepted from discharge under section 523(a)(4).

## STANDARD OF REVIEW

■ The denial of a default judgment is reviewed for an abuse of discretion. *In re Saylor*, 178 B.R. 209, 211 (9th Cir.BAP 1995). The bankruptcy court's conclusions of law regarding non-dischargeability are reviewed de novo. *Lin v. Ehrle (In re Ehrle)*, 189 B.R. 771, 774 (9th Cir.BAP 1995); *In re Kirsh*, 973 F.2d 1454 (9th Cir.1992). A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the lower court correctly applied the relevant substantive law. *Id.* at 441.

■ The burden is on the creditor to establish each element of the exception to dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

## DISCUSSION

The Appellant contends the elements of embezzlement have been met in this case and that the court erroneously concluded that a prerequisite to embezzlement is "an obligation on the Debtor to keep those funds in a separate account." The Appellant further contends, under California law, the Debtor's receipt of the funds constituted a "special

---

to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed. R.Civ. P.").

**4.** (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services
... to the extent obtained by—
  (a) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

576

deposit" and therefore the Debtor did not take the funds as owner.

Section 523(a)(4) prevents the discharge of a debt based on an embezzlement. It provides in relevant part:

> (a) A discharge under section 727, 1131, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—
>
> (4) for . . . embezzlement, or larceny . . .

11 U.S.C. § 523(a)(4).

■ Federal law and not state law controls the definition of embezzlement for purposes of section 523(a)(4). *Fraternal Order of Eagles, Aerie v. Mercer (In re Mercer)*, 169 B.R. 694, 697 (Bankr.W.D.Wash.1994); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Schultz*, 46 B.R. 880, 890 (Bankr.D.Nev.1985). Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been [e]ntrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895).

■ In the context of non-dischargeability, embezzlement requires three elements: (1) property rightfully in the possession of a nonowner, (2) nonowner's appropriation of the property to a use other than which it was entrusted, and (3) circumstances indicating fraud. *Transamerica Commercial Finance Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir.1991) (quoting *In re Hoffman*, 70 B.R. 155, 162 (Bankr.W.D.Ark. 1986)); *In re Schultz*, 46 B.R. at 889.

## I. Property in the possession of a nonowner

At the hearing the Appellant produced the affidavit testimony of Gottshall to prove the Debtor was a "nonowner" of the funds. Gottshall attested that the parties orally agreed that the funds were to be returned in the event the seminar was canceled. However, the court found Gottshall's testimony insufficient to show that the Debtor was a "nonowner." The court concluded that since the Debtor was under no duty by law or by agreement to segregate the funds, title of the funds passed to the Debtor upon receipt of the funds.

■ The Appellant correctly contends that proving embezzlement does not always require a pre-existing obligation to keep the funds in a separate account. Embezzlement does not require the existence of a fiduciary relationship. *In re Littleton*, 942 F.2d at 555 (citing *In the Matter of Shuler*, 21 B.R. 643, 644 (Bankr.D.Idaho 1982)); *In re Talcott*, 29 B.R. 874, 878 (Bankr.D.Kan.1983).

Courts have found that the payment of funds pursuant to contract confers ownership of the funds. *See In re Mercer*, 169 B.R. at 697 (Under federal bankruptcy law, absent agreement to the contrary, a contractor receiving progress payments takes the funds as owner); *see also In re Schultz*, 46 B.R. at 889 (Where building contract provides for certain services at certain prices, and there is a transfer of money within the contract price, ownership as well as possession passes, and all that remains is a contractual obligation).

These contractor cases, however, are distinguishable from the instant case. Here, it is undisputed that the funds transferred to the Debtor within her role as travel agent did not contain compensation for her services. The Debtor had no contractual right to any part of the funds. Her only role was to act as a conduit of the funds; to apply them exclusively for the arrangement of travel accommodations. Money received by travel agents to be paid to travel providers is not income. *See Brill v. Commissioner of Internal Revenue*, 1982 WL 10598 (U.S. Tax Court 1982); 43 T.C.M. (CCH) 1542 (Funds received by travel agents who were contractually obligated to pay over to air carriers did not constitute earnings received under a claim of right, and without restriction as to disposition).

In *O'Connor v. Booker (In re Booker)*, 165 B.R. 164 (Bankr.M.D.N.C.1994) the debtor, a financial advisor, was given $140,000 by the plaintiffs and in return he gave them two promissory notes. The debtor assured the plaintiffs the money would be used for investments on behalf of the plaintiffs. Instead, the defendant appropriated the money for personal use. The court applied the *Littleton* test and found embezzlement. Although

the court did not specifically discuss the "nonowner" element, the court impliedly found the defendant was a nonowner, and that he embezzled the funds:

> [I]t is clear that Mr. Booker took the funds entrusted to him by the O'Connors and put them to his personal use, rather than the use intended by the O'Connors. Whether Mr. Booker intended to defraud the O'Connors is a question of fact. *Id.* The circumstances surrounding the misappropriation clearly indicate fraud, and this Court, considering all the evidence and testimony, finds that Mr. Booker intended to defraud the O'Connors when he received the funds. Therefore, each element of embezzlement is met, and the debt is nondischargeable under § 523(a)(4).

*Id.* at 171.

■ As the *In re Booker* case indicates, the fact the Debtor had lawful possession of the funds and wide discretion to dispose of the funds on behalf of the Appellant is insufficient to confer ownership of the funds to the Debtor. The funds given to the Debtor were not authorized to be used for anything other than travel arrangements. The funds were not a gift, nor did they contain compensation for the Debtor's services. The Debtor took the funds and put them to a use not intended by the Appellant. The fact that the Debtor paid back over $20,000 to the Appellant indicates that the Debtor was aware that the funds were not hers. The court's imposition of a duty to segregate the funds was an unnecessary hurdle to proving nonownership. The evidence and case law indicates the Debtor was a "nonowner" of the funds.

■ The Appellant further alleges its transfer of money to the Debtor constituted a bailment under California law, and consequently the Debtor did not take the funds as owner. According to California law, where the bailee receives money or property for a special and limited purpose (a "special deposit"), the bailor retains title. *Ennis–Brown Co. v. Richvale Land Co.,* 47 Cal.App. 508, 511, 190 P. 1064 (1920). The Appellant therefore contends the finding of the court was erroneous and not in conformity with California law. As discussed earlier, federal law and not state law governs the definition

of embezzlement. *See In re Mercer,* 169 B.R. at 697 (Plaintiff may not rely on a state law presumption that a contractor receives funds as an agent rather than an owner). Courts have expressly declined to apply state law definitions of embezzlement. This argument is not supported by the case law.

## II. Misappropriation of the property

■ According to the testimony of Gottshall, the Appellant advanced funds to the Debtor in order for the Debtor to arrange the Appellant's "travel, lodging, and dining accommodations." Gottshall testified the Debtor orally agreed that if the Appellant "canceled any of the anticipated travel and lodging plans, [the Debtor] would immediately return all sums advanced to her less any legitimately incurred cancellation charges." However, after the Appellant canceled the seminar and demanded the money back, the Debtor did not return the funds as promised, but instead claimed the money had been spent on "non-refundable deposits." It was later discovered that such deposits were never made on behalf of the Appellant. Following the discovery of the misuse of funds, the Debtor was unable to pay back the unrefunded portion but began making payments until she filed for bankruptcy relief. There is also unrebutted testimony that the Debtor admitted keeping the funds and not making deposits on behalf of the Appellant. The element of misappropriation has been met.

## III. Circumstances indicating fraud

■ During the hearing on the motion for entry of default the court addressed only the issue of whether the funds were funds belonging to another and never addressed the question of circumstances indicating fraud. The record, however, contains circumstances indicating fraud. The declaration of Gottshall attests that the Debtor informed him that she was unable to refund approximately $84,000.00 of the forwarded funds because she had incurred non-refundable deposits. Later, when faced with discovery of the false statement, the Debtor admitted the deposits had never been made.

## CONCLUSION

The unrebutted testimony of Gottshall indicates the Debtor was a nonowner of the funds, and that the Debtor used the funds for a purpose other than that which it was entrusted. The record further contains circumstances indicating fraud. The elements of embezzlement are present. Thus, we reverse the finding of dischargeability and remand the case back to the lower court for entry of a default judgment concluding the debt is non-dischargeable.