In re Charti **DAECHARKHOM**, Debtor.

**Waugh Real Estate Holdings, LLC, Plaintiff,**

v.

**Charti Daecharkhom, Defendant.**

**Bankruptcy No. 11–13396–mkn.**
**Adversary No. 11–01152–mkn.**

United States Bankruptcy Court, D. Nevada.

Oct. 4, 2012.

Kathryn I. Holbert, Law Office of Brian D. Shapiro, LLC, Las Vegas, NV, for Plaintiff.

Christopher Patrick Burke, Las Vegas, NV, for Defendant.

## TRIAL RULING

THAD J. COLLINS, Bankruptcy Judge.

This adversary case alleging non-dischargeability of a debt under 11 U.S.C. § 523(a)(2) came before the Court[1] for trial on April 16, 2012. Attorney Kathryn I. Holbert appeared on behalf of Plaintiff, Waugh Real Estate Holdings, LLC. Attorney Christopher Burke appeared on behalf

---

1. The Honorable Thad J. Collins, United States Bankruptcy Judge for the Northern District of Iowa, sitting by designation.

of Debtor/Defendant, Charti Daecharkhom. After taking evidence, the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## STATEMENT OF THE CASE

Plaintiff seeks a determination that Debtor's mortgage loan, used to finance the purchase of a piece of residential property, is non-dischargeable under 11 U.S.C. § 523(a)(2). At trial, Plaintiff offered evidence that Debtor's statement on his loan application stating his monthly income was $11,600.00 was false. Plaintiff also offered evidence that the "Occupancy Statement" Debtor signed in connection with obtaining the loan was false. The "Occupancy Statement" confirmed Debtor was purchasing the property with the intention of using it as his principal residence and would begin occupying the property within thirty days of closing. Plaintiff claims Debtor did not move into the residence within thirty days and the property never has been his principal residence.

Debtor denied the accusations and presented his own evidence. He testified he did not understand the loan documents he signed and the forms he filled out. Debtor also testified the "Occupancy Statement" was true because he used the property as his principal residence for over two years.

The Court finds that Plaintiff offered insufficient evidence the lender relied on any of Debtor's alleged false statements. The Court further finds there is insufficient evidence that Debtor intended to deceive the lender when he obtained the mortgage. For these reasons, the Court denies the Plaintiff's request to find the debt non-dischargeable.

## PROCEDURAL HISTORY

Debtor/Defendant filed a voluntary Chapter 7 petition on March 11, 2011.

(Exh. 1.) On June 13, 2011, Plaintiff, Waugh Real Estate Holding, LLC, filed an Adversary Complaint seeking a Court determination of the dischargeability of the mortgage debt. Plaintiff's Complaint alleges that on August 13, 2005, Defendant made false representations when he entered into a Residential Purchase Agreement to purchase real property located at 5690 Topaz St., Las Vegas, NV 89120 (the "Topaz Street Property"). The Court held a trial in Las Vegas on April 16, 2012. Debtor/Defendant was called by Plaintiff to testify. Debtor/Defendant's primary language is Thai; two interpreters were used at trial to assist him during his testimony. After hearing the evidence and reviewing the record, the Court makes the following findings of fact.

## FINDINGS OF FACT

On October 5, 2005, Debtor applied for a loan with Spectrum Funding Corporation to finance the purchase of a residence on Topaz Street in Las Vegas. The Debtor filled out the loan application. It remains unclear whether someone assisted him in the process. He has a language barrier.

The loan application ultimately showed Debtor was self-employed at AA Tools Professional making $11,600.00 per month. The loan application showed he owned real property at 6810 Targhee Court, Las Vegas, NV 89156. On the day before, October 4, 2005, Defendant had signed an "Occupancy Statement" which showed he was purchasing the Topaz Street Property with the intent of using the property as his principal residence. It also showed his occupancy of the home would begin within thirty days of the loan closing.

Also on or about October 5, 2005, Defendant signed a promissory note in the amount of $93,000.00, with Spectrum Funding Corporation. This was the sec-

ond mortgage on the Topaz Street Property. The promissory note provided Defendant would make monthly payments in the minimum amount of $903.27 until the note was paid in full. Debtor made no payment on the note after January 8, 2008.

Plaintiff presented three Uniform Residential Loan Applications for the Topaz Street Property signed by Debtor. Two of the Applications listed a gross monthly income of $11,600.00 and one listed a gross monthly income of $12,794.89. Plaintiff's Exhibit 10 is a Uniform Residential Loan Application purportedly signed by Debtor on August 31, 2005. It lists a gross monthly income of $11,600.00. Plaintiff submitted only three of the four pages of the application. Debtor's initials appear on pages one and two. Debtor's signature is on page three. Next to Debtor's signature, however, is a date which appears to be printed in another's handwriting. Debtor testified he did not write the date.

Under Debtor's signature is a box for the "Interviewer's Name" along with date and signature. The interviewer is listed as Dom Somee, but the box was not signed by the interviewer. It appears the interviewer was employed by an entity called Direct Equity Mortgage—whose relationship to the transaction has not been described. The date is filled in with what appears to be the same handwriting as the date next to Debtor's signature. The Court finds that the date was written in later by a third party.

Exhibit 11 is a second Uniform Residential Loan Application Debtor signed on October 5, 2005. Again, only the first three of the four pages of the loan document have been provided. Debtor's initials appear on pages one and two. Again the document lists Debtor's income as $11,600.00 per month. Page three again lists the interviewer's name as Dom So-

mee, but the document is neither signed nor dated by the interviewer.

Exhibit 12 is a third Uniform Residential Loan Application which like Exhibit 11 was also signed by Debtor on October 5, 2005. Pages one and two include Debtor's initials and pages three and four include Debtor's full signature. Page two lists Debtor's gross monthly income as $12,794.89. Page three again lists the interviewer as Dom Somee of Direct Equity Mortgage. He certified the application was taken by face-to-face interview. This shows Somee's signature but is dated October 3, 2005—two days *before* Debtor signed.

Debtor's native language is Thai. Debtor can read and write common/simple English. At trial, Plaintiff called Debtor as a witness—without an interpreter. Shortly into his testimony, the Court stopped proceedings to get an interpreter. It became apparent Debtor did not understand the questions. After arranging interpreter services, his testimony proceeded.

Debtor testified he has never made $11,600.00 a month and was not making that salary at the time he purchased the property in question. Debtor admitted that he signed those Applications and initialed the documents on the bottom of the pages. He stated, however, that his real estate agent did not explain the information to him and he did not understand what he was signing. After the Application was completed, Debtor similarly filled out an Employment Verification. (Exh. 13.) Spectrum Funding Corporation took the forms but never requested paystubs, bank statements, or tax returns to verify his income.

Before Debtor purchased the Topaz Street Property at issue here, he was living with his wife at 6810 Targhee Court in Las Vegas. After the marriage broke down, Debtor purchased the Topaz Street

Property. He intended to live in the Topaz Street residence. He testified he lived at the Topaz Street Property for two years beginning in late 2005. His answers to interrogatories were admitted as an exhibit and indicate he lived there from January 2006 to December 2007. (Exh. 5.)

Plaintiff also presented the testimony of Kyle Waugh, Managing Member of Plaintiff, Waugh Real Estate Holdings, LLC. Waugh is in the business of buying unsecured non-performing second mortgages. Waugh testified that Waugh Real Estate was the holder of the note on the Topaz Street Property which he purchased from Spectrum Funding in September 2010. Waugh had no connection to the loan in 2005. He had no knowledge of the circumstances surrounding the loan in 2005. He also had no knowledge of the basis Spectrum Funding used to make loan decisions. He admitted he held no independent knowledge of how Spectrum Funding made credit decisions. Plaintiff did not present any testimony, affidavits, or exhibits from Spectrum Funding to explain what information Spectrum Funding relied upon and why in making the loans to Debtor.

## ARGUMENTS OF THE PARTIES

Nine months after Spectrum Funding transferred its interest in the Debtor's loan and mortgage to Plaintiff, Plaintiff filed this case arguing the Debtor's loan is non-dischargeable under 11 U.S.C. § 523(a)(2). Plaintiff argues Debtor made fraudulent statements regarding his monthly income in order to obtain the loan to finance his purchase of the Topaz Street Property. Plaintiff also argues Debtor fraudulently claimed he would occupy the property even though he never did and never intended to do so. Debtor asserts Plaintiff failed to carry its burden of proof on these claims.

## CONCLUSIONS OF LAW AND DISCUSSION

Plaintiff argues the second mortgage is non-dischargeable under 11 U.S.C. § 523(a)(2). Section 523(a) provides in part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or . . . .

11 U.S.C. § 523(a)(2) (emphasis added). Plaintiff's brought the case under both § 523(a)(2)(A) and (a)(2)(B).

■■■ "The creditor bears the burden of proving each element of § 523(a) by a preponderance of the evidence." *Kaur v. Kaur (In re Kaur)*, B.A.P. No. EC–10–139–HPaJu, Bankr. No. 09–47201, Adv. No. 10–02146, 2011 WL 4502981, at *4 (9th Cir. BAP June 29, 2011) (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). "In order to strike a balance between allowing debtors a fresh start and preventing the debtor

from retaining the benefits of property obtained by fraudulent means, § 523(a) is strictly construed against creditors and in favor of debtors." *Id.* (citing *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir.2000); *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1, 5 (9th Cir. BAP 2008), *aff'd*, 600 F.3d 1219, 1222 (9th Cir.2010)).

█ Section 523(a)(2)(A) requires proof of "false pretenses, false representations, or actual fraud"—but does not apply to a debtor's "statement[s]" about his "financial condition." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(B) specifically applies to statements in writing about a debtor's financial condition. Plaintiff raises dischargeability questions under both sections.

Plaintiff argues there were two materially false written statements made with regard to the financing of the purchase of the Topaz Street Property. Plaintiff first alleges the income of $11,600.00 per month Debtor listed on the Uniform Residential Loan Applications was incorrect and in violation of § 523(a)(2)(B). Plaintiff further alleges that by signing the "Occupancy Statement" during the loan application process Debtor made a false representation in violation of § 523(a)(2)(A). The Court addresses the arguments in that order.

**A. Statement of Income and Violation of § 523(a)(2)(B).**

█ The Ninth Circuit has restated the elements of § 523(a)(2)(B) as seven factors:

(1) a representation of fact by the debtor; (2) that was material; (3) that the debtor knew at the time to be false; (4) that the debtor made with the intention of deceiving the creditor; (5) upon which the creditor relied, (6) that the creditors reliance was reasonable; [and] (7) that

damage proximately resulted from the representation.

*Kavoussi v. Johnson & Johnson Fin. Corp. (In re Kavoussi)*, 60 Fed.Appx. 125, 126 (9th Cir.2003) (quoting *Candland v. Ins. Co. of N. America (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir.1996)). The only issues here are whether Plaintiff demonstrated knowingly false statements or an intention to deceive (factors 3 and 4) and the necessary reliance on those statements (factors 5 and 6).

Plaintiff argues that Debtor made a materially false representation on his Uniform Residential Loan Applications by listing a monthly income of $11,600.00, and that Plaintiff relied upon those false statements in making the loans.

**1. Knowingly False Statements and Intent to Deceive Under § 523(a)(2)(B).**

█ Plaintiff has failed to show Debtor made knowingly false statements or intentionally deceived the loan creditor. Under § 523(a)(2)(B), Plaintiff is required to prove that Debtor intentionally offered a knowingly false writing when viewed in the totality of the circumstances. *See Tustin Thrift & Loan Ass'n v. Maldonado (In re Maldonado)*, 228 B.R. 735, 738 (9th Cir. BAP 1999) ("The creditor has the burden to establish intent by a preponderance of the evidence under Section 523(a)(2)(B)." (citing *First Del. Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 575 (9th Cir. BAP 1997))). "Since direct proof of intent to deceive is nearly impossible to obtain, it may be inferred from proof of surrounding circumstances." *Id.* at 738. "For the purposes of Section 523(a)(2)(B), intent [to deceive] is 'established by showing either actual knowledge of the falsity of a statement, or reckless disregard for the truth.'" *Tovar v. Heritage Pac. Fin., LLC (In re Tovar)*, B.A.P. No. CC11–

1696–MkDKi, Bankr. No. LA–10–41664, Adv. No. LA–10–03016, 2012 WL 3205252, at *12 (9th Cir. BAP Aug. 3, 2012) (quoting *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (9th Cir. BAP 1999)).

Plaintiff argues that intent can be inferred from the facts and from the circumstances. Debtor disagrees and argues he did not understand the documents he was signing. Debtor further points out the evidence shows the documents were likely blank when he signed them and the income figures on the Application were added later.

Plaintiff made no showing of actual knowledge of falsity or reckless disregard for the truth. While intent to deceive may be inferred if the circumstances warrant, those circumstances are not present here. Plaintiff seems to argue that because the statement was materially false, it follows that Debtor knew that he was acting with intent to deceive. A materially false statement itself does not mean that Debtor knew it was false and or was acting with intent to deceive. This is particularly true here where it is doubtful Debtor knew what he was signing. It appears most of the documents were actually filled in by someone else at a different time. As discussed above, the Court has serious concerns as to the validity of the documents Debtor signed. The Court finds Plaintiff has failed to meet its burden of showing either a knowingly false statement or an intent to deceive.

### 2. Reasonable Reliance Under § 523(a)(2)(B).

Plaintiff also is required to prove reliance on the statement and that the reliance was reasonable or justifiable (elements 5 and 6). *See Kavoussi*, 60 Fed. Appx. at 125. The issue of justifiable or reasonable reliance is one of fact. *McQuaid v. First Interstate Bank of Cal.*

*(In re McQuaid)*, 65 F.3d 175 (Table), 1995 WL 506934, at *1 (9th Cir.1995). To make this determination, the Court should look " 'to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor.' " *McQuaid*, 1995 WL 506934, at *1 (quoting *Eugene Parks Law Corp. Defined Benefit Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1460 (9th Cir.1992)). *See also Cashco Fin. Serv. v. McGee (In re McGee)*, 359 B.R. 764, 774 (9th Cir. BAP 2006) (noting case-by-case approach in light of totality of circumstances).

Here, Plaintiff offers no evidence at all of the circumstances surrounding the transaction, nor evidence of the subjective effects on the lender. Plaintiff entirely failed its burden of proof on this issue.

As an assignee, Plaintiff need not show it relied on the false representation—but must show the original lender did. Plaintiff proved no proof of reliance at all. Plaintiff argues only that reliance can be inferred from the facts. The Court disagrees. Case law does not support Plaintiff's argument. There must be some factual evidence that the originator relied on the materially false writing. Plaintiff has the burden of offering evidence of reasonable reliance. *In re McGee*, 359 B.R. at 774–75. Waugh needed to at least present "direct proof" of the original lender's "reasonable reliance" to establish its burden of proof. *Id.* It did not do so. "At the very least, it should have introduced witness testimony concerning its reliance that might have explained its position." *Id.* Plaintiff simply asks the Court to assume the element of reliance was satisfied. That is a view not supported by the law or the factual context of this case.

Plaintiff's Counsel argues that case law shows that if a form was placed in the

borrower's file it was relied upon, but Plaintiff's Counsel failed to provide any citation supporting this assertion. The Court made an independent search and found no such case. Even if that were so, the Court has serious concerns as to the legitimacy of the documents Plaintiff relies on in support of its position. Exhibits 10 and 11 are incomplete as only three of four pages of the Application have been provided. Neither Exhibit 10 nor 11 include an interviewer's signature. Exhibit 12, which was purportedly prepared on the same day as the Application in Exhibit 11, includes a completely different monthly income—$12,794.89. Moreover, this document was supposed to be signed by an interviewer *after* a face-to-face interview, but is dated two days before Debtor's signature. These facts all demonstrate Plaintiff's failure to sustain its burden of proof proving reasonably reliance. Plaintiff has thus failed to satisfy its burden under § 523(a)(2)(B).

**B. Occupancy Statement and False Representation Under § 523(a)(2)(A).**

■ Plaintiff's final argument is that the debt is non-dischargeable under § 523(a)(2)(A) because Plaintiff made a false representation about his intent to live in the Topaz Street Property. Debtor's "Occupancy Statement" lists Debtor's (Borrower's) name, the address of the property, and the loan number. It then states:

I (We) hereby certify that my (our) intent in seeking this loan is to obtain financing for the purchase of a home to be used as my (our) principal residence, with occupancy to begin within 30 days after loan closing.

I (We) recognize that any loan made pursuant to this application is contingent upon owner occupancy and agree that

(1) failure to occupy the property as provided in this certification shall constitute a DEFAULT under the terms of the loan, and (2) in case of such default, I(we) must upon recall of the loan by Lender, immediately pay the full balance of the loan and any other amounts to which Lender is entitled upon default.

(Exh. 6, Occupancy Statement.)

■ The Ninth Circuit has stated the standards governing § 523(a)(2)(A) as follows:

[A] creditor must demonstrate five elements to prevail on any claim arising under § 523(a)(2)(A). *See, e.g., Britton v. Price (In re Britton),* 950 F.2d 602, 604 (9th Cir.1991). The five elements, each of which a creditor must demonstrate by a preponderance of the evidence, are: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1125 (9th Cir.1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai),* 87 F.3d 1082, 1086 (9th Cir.1996).

*In re Slyman,* 234 F.3d 1081, 1085 (9th Cir.2000).

The Court finds that Plaintiff again failed its burden of proof. Debtor, as noted above, did not make a *knowingly* false representation. Debtor and his wife were in the process of a divorce and he purchased the Topaz Street Property in order to reside there. Debtor lived at the Topaz Street Property for approximately two years. Plaintiff presented no evidence to counter this evidence. Moreover, as in the

§ 523(a)(2)(B) analysis, Plaintiff provided absolutely no evidence that Spectrum Funding relied upon this representation in any way. Plaintiff entirely failed to meet its burden of proof for relief under § 523(a)(2)(A).

**WHEREFORE,** judgment is entered in Defendant/Debtor's favor. The above-captioned adversary is **DISMISSED.**