FILED

DEC 16 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   WW-15-1178-TaKuJu |
| MARK E. PHILLIPS, | Bk. No.   14-18440-TWD |
| Debtor. | Adv. No.  15-01052-TWD |
| MARK E. PHILLIPS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| ESTATE OF ROBERT M. ARNOLD, | |
| Appellee. | |

Submitted Without Oral Argument[**]
on November 17, 2016

Filed – December 16, 2016

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding

Appearances:   Appellant Mark E. Phillips pro se on brief; Alan
J. Wenokur on brief for Appellee Estae of Robert
M. Arnold.

Before:   TAYLOR, KURTZ, and JURY, Bankruptcy Judges.

---

[*]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

[**]   The Panel unanimously determined that the appeal was
suitable for submission on the briefs and record pursuant to
Rule 8019(b)(3).

## INTRODUCTION

Debtor Mark E. Phillips appeals from a summary judgment excepting from discharge a prepetition state court judgment pursuant to § 523(a)(4)[1] and based on embezzlement. He contends that the bankruptcy court erred in giving the state court judgment issue preclusive effect.

We AFFIRM the bankruptcy court.

## FACTS

In June 2006, Debtor incorporated Banana Corporation ("Banana") in the state of Washington. At all relevant times, he was the corporation's sole director, officer, and majority shareholder.

Debtor solicited a $5.5 million investment from Robert M. Arnold allegedly to allow Banana "to develop concepts, trade secrets and intellectual property regarding a mobile transaction business . . . ." The investment was made in several tranches between June 2006 and May 2007. In exchange, Arnold obtained a 15% ownership interest in Banana; Debtor retained the remaining 85% ownership interest. There were no other shareholders of Banana and no other cash investors aside from Arnold.

Debtor also owned A-Dot Corporation ("A-Dot"). Before forming Banana, he effectively rendered A-Dot inactive by shifting substantially all its employees and assets to MOD Systems, Inc. ("MOD"), yet another wholly owned company.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

Despite the transfers, Debtor retained a position as some type of employee at A-Dot, but MOD also employed him full-time.

In July 2006, the month after Arnold's infusions of capital to Banana commenced, Debtor caused Banana to enter into a contract agreeing to provide services to the now inactive A-Dot. Thus began a series of transactions between Banana and A-Dot that fall broadly into three general categories: consulting fee transfers, loans, and miscellaneous transfers.

**Consulting fees arrangements.** In December 2006, Banana paid A-Dot a $1,000,000 "consulting fee." As the Washington state court later found, however, there were no records justifying this payment, documenting Banana's receipt of consulting services, or reflecting any "deliverables, action items, scheduling, scope of assignment, compensation rates, deadlines or invoices . . . ." [Findings of Fact & Conclusions of Law at 5, Arnold v. Phillips, No. 10-2-10227-2 SEA (Super. Ct. Wash., Sept. 26, 2013).] Debtor concurrently caused A-Dot to transfer the $1,000,000 "consulting fee" into his personal brokerage account. He later claimed that the fee was a licensing fee rather than compensation for consulting services; the state court was not convinced, noting that "the intellectual property allegedly licensed had already been assigned by [Debtor] to Banana in return for stock." [Id.]

Between June and December 2006, Debtor also caused Banana to pay him $1,160,000 in "consulting fees". The state court later found that there was no written agreement between Banana and Debtor documenting a consulting arrangement or otherwise "setting forth the scope of work, deliverables, action items,

3

deadlines or rates for these 'consulting fees.'" And there were no records as to "any deliverables, action items, scheduling, scope of assignment, compensation rates, deadlines or invoices . . . ." [Id. at 7.] The state court was skeptical of Debtor's ability to provide consulting services to Banana when he was employed more than full-time (60 hours a week) by MOD.

In addition, Debtor caused Banana to enter into a consulting agreement with his longtime friend, Douglas Lower. Banana eventually paid a total of $450,000 in "consulting fees" to Lower as an "advance" of the consulting fees. The state court later found, however, that the agreement did "not describe a work assignment, provide[d] no fee schedule and identifie[d] no rate of pay." [Id. at 9.] The state court also found that Debtor acknowledged that this fee constituted a "finders fee" to Lower, "for getting [Debtor] access to [] Arnold and his money through Lower's wife . . . ." [Id.] Apparently, Lower's wife was a longtime employee of Arnold's. The state court found that Debtor disguised the finder's fee to hide its true nature from Arnold.

**Loans.** In September 2006, Debtor caused Banana to loan $2,385,000 to A-Dot; the loans came due and payable five years later. Debtor signed the loan documents as both lender and borrower and without corporate board authorization; he did so in contravention of A-Dot's organizational documents and in disregard of legal counsel's advice that he "avoid conflicted transactions unless an independent board approved the transaction." A-Dot ultimately repaid only $50,000 on the loan and never paid anything categorized as interest. Despite these

4

facts, Banana's financial records did not contain any documentation of loan accruals. When the state court issued its findings of fact and conclusions of law, A-Dot owed Banana $3,095,709.558 on this loan.

In February 2007, Debtor caused Banana to loan Lower $200,000. The promissory note, signed by Debtor on Banana's behalf, provided for a five year term and established a 5% annual interest rate. Lower never paid the loan.

**Other transfers.** Finally, Debtor caused A-Dot to make the following transfers, apparently using funds from the Banana transactions:

• October 2006: $150,000 wire from A-Dot to other Debtor controlled entities;

• February 2007: $500,000 wire from A-Dot to Debtor;

• June 2007: $25,000 wire from A-Dot to Debtor;

• 2007: Two income tax payments by A-Dot for Debtor's personal taxes in the total amount of $705,000; and

• Payments totaling at least $100,584.28 for repayment of credit card purchases made for Debtor's personal benefit.

The state court determined that all of the preceding transactions lacked a business justification and "constituted a related party transaction without an independent board review or approval, self-dealing, and a breach of [Debtor's] fiduciary duty owed to Banana Corporation."

**The state court actions.** After he discovered these transactions, Arnold sued Banana in Washington state court. To settle this first suit, Banana assigned to Arnold its claims against Debtor and other defendants. Arnold, as Banana's

5

assignee, brought a second state court action against Debtor and others. This complaint alleged several causes of action, including corporate waste and looting under Revised Code of Washington ("RCW") § 23B.08.300,[2] conversion and embezzlement under RCW § 23B.08.300, unjust enrichment, and breach of contract. After Arnold died, his estate succeeded him in the lawsuit and asserted Banana's claims.

The state court subsequently entered an order granting summary judgment in Arnold's estate's favor on the above causes of action (i.e., the causes Arnold's estate was asserting on Banana's behalf). In doing so, it found that Debtor's "behavior amounted to a deliberate looting or waste of funds invested by [] Arnold in Banana" and established that Debtor was liable to Banana. It reserved the amount of damages for trial.

Following a trial on damages, the state court issued written findings of fact and conclusions of law and entered a judgment in favor of the Arnold estate, as Banana's assignee. The judgment awarded damages in the amount of $4,190,000. The state court adopted and expanded on its summary judgment findings. Debtor appealed the judgment to the Washington court of appeal.

**The nondischargeability action**. Debtor then filed a voluntary chapter 7 petition. The Arnold estate commenced a nondischargeability action against him and sought to except the state court judgment from discharge under § 523(a)(2)(A),

---

[2] RCW § 23B.08.300 relates to the general standards for corporate directors under Washington law.

6

(a)(4), and (a)(6). Debtor received his chapter 7 discharge.

The Arnold estate later moved for summary judgment based on the issue preclusive effect of the state court judgment as to the claims based on § 523(a)(4) embezzlement and § 523(a)(6). Debtor, pro se, opposed. As relevant here, he asserted that § 523(a)(4) embezzlement required "fraud in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud." He contended that Washington law did not provide for a statutory or common law cause of action for embezzlement. And he argued that the state court did not make a finding of fraud as required for § 523(a)(4) embezzlement.

At the hearing, the bankruptcy court granted summary judgment on the § 523(a)(4) embezzlement claim but denied the motion as to the § 523(a)(6) claim. In a thorough oral ruling, it meticulously set forth the basis for its decision, specifically pointing out that the third element of § 523(a)(4) embezzlement "require[d] only indicia of fraud as opposed to proof of all elements of fraud." It found that

> The state court's findings and conclusions demonstrate[d] numerous indicators of fraud including "intentional conversion of Banana's funds", self-dealing, the complete lack of disclosure to [] Arnold of the improper payments, the lack of a business purpose for the improper payments, the lack of records and invoices, clear and convincing evidence of bad faith, and mislabeling the payment of a substantial finder's fee in order to avoid disclosure to [] Arnold.

Hr'g Tr. (May 15, 2015) at 25:6-14.

In denying the summary judgment motion on the § 523(a)(6) claim, the bankruptcy court determined that the state court's findings and conclusions did not contain sufficient findings to

7

support the § 523(a)(6) willful injury requirement. It noted, in particular, that "[t]he state court made very few findings regarding [Debtor's] subjective intentions."

Following the bankruptcy court's entry of the order on the summary judgment motion,[3] Debtor timely appealed.

While this appeal was pending, the Washington court of appeal issued a decision affirming the state court judgment "in all respects." See Estate of Arnold v. Phillips, 191 Wash. App. 1014, 2015 WL 7260028 (Nov. 16, 2015) (unpublished).

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in granting summary judgment to the Arnold estate by giving issue preclusive effect to the state court judgment.

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decisions to grant summary judgment and to except a debt from discharge under § 523(a). See Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1221-22 (9th Cir. 2010); Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009); see also Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002)

---

[3] The bankruptcy court's order on the summary judgment motion contained a Civil Rule 54(b) certification and stated that it was a final order. Thus, the order is final for the purposes of this appeal.

8

(nondischargeability presents mixed issues of law and fact and is reviewed de novo).

We also review de novo the bankruptcy court's determination that issue preclusion was available. Black v. Bonnie Springs Family Ltd. P'Ship (In re Black), 487 B.R. 202, 210 (9th Cir. BAP 2013). If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

**Summary judgment.** Summary judgment is appropriate where the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (applicable in adversary proceedings under Rule 7056). The bankruptcy court must view the evidence in the light most favorable to the non-moving party when determining whether genuine disputes of material fact exist and whether the movant is entitled to judgment as a matter of law. See Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). And it must draw all justifiable inferences in favor of the non-moving party. See id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

9

**Issue preclusion in a nondischargeability proceeding**. In a summary judgment context, the bankruptcy court may give issue preclusive effect to a state court judgment as the basis for excepting a debt from discharge. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). The party asserting preclusion bears the burden of establishing the threshold requirements. Id. This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). Ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

We apply the forum state's law of issue preclusion when determining if issue preclusion is appropriate. In re Harmon, 250 F.3d at 1245. Here, that requires analysis under Washington law.

**Washington issue preclusion**. In Washington, issue preclusion requires that:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

In re Estate of Hambleton, 181 Wash. 2d 802, 834 (2014).

On appeal, Debtor does not contest that the second,[4] third,

---

[4] Under Washington law, a trial court judgment is final for preclusion purposes during an appeal. State v. Harrison,

(continued...)

10

and fourth elements were satisfied.  Instead, he focuses on whether the issues decided by the state court were identical to those required for a determination of § 523(a)(4) embezzlement.

**Section 523(a)(4).**  Section 523(a)(4) prevents discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Federal law (and not state law) supplies the definition of embezzlement within the meaning of § 523(a)(4).  First Del. Life Ins. Co. v. Wada (In re Wada), 210 B.R. 572, 576 (9th Cir. BAP 1997).  It is defined as "the fraudulent appropriation of property by a person to whom such property has been [e]ntrusted or into whose hands it has lawfully come."  Id. (citing Moore v. United States, 160 U.S. 268, 269 (1895)).  And it "requires a showing of wrongful intent."  See Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1760 (2013).  "Embezzlement, thus, requires three elements: (1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud."  Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton), 942 F.2d 551, 555 (9th Cir. 1991) (internal quotation marks and citation omitted).

Debtor does not dispute on appeal that he was entrusted with Banana's funds.  Nor can he credibly dispute the state court's findings, now affirmed by the Washington court of appeal, that he acted inappropriately as to the funds.  Thus,

---

[4](...continued)
148 Wash. 2d 550, 561–62 (2003).

the only question on appeal relates to the third element: whether the circumstances indicated fraud and whether the state court judgment previously adjudicated this issue.

**Issue preclusion was available**. As noted, in determining whether issue preclusion was available in this nondischargeability action, we must compare the elements establishing liability in the state court judgment with the elements required for a § 523(a)(4) embezzlement judgment. Here, this task is superficially complicated because there is no civil cause of action for embezzlement under Washington law. Instead, under Washington law, embezzlement is a form of criminal theft. See In re Disciplinary Proceeding Against Schwimmer, 153 Wash. 2d 752, 761 n.2 (2005) (citing RCW § 9A.56.020(1)(a)). Thus, the state court civil cause of action labeled as an embezzlement claim was not based on RCW § 9A.56.020(1)(a), a criminal statute. Instead, embezzlement referred imprecisely to a claim for breach of Debtor's duties as a director under RCW § 23B.08.300.

The Washington action conversion claim presents another facial problem. In Washington, "[c]onversion is the willful interference with another's property without lawful justification, resulting in the deprivation of the owner's right to possession." Lowe v. Rowe, 173 Wash. App. 253, 263 (2012). But conversion under Washington law does not require a wrongful intent, Damiano v. Lind, 163 Wash. App. 1017 (2011), as is necessary for a § 523(a)(4) embezzlement determination.

Notwithstanding these differences, we conclude that the substance of the state court's findings and conclusions taken

12

together support a determination that the circumstances sufficiently indicated fraud and a wrongful intent as required for a § 523(a)(4) nondischargeability judgment.

Debtor primarily asserts error because the state court did not make an explicit finding of fraud. We acknowledge this point but find it inapposite. The finding required for a determination of § 523(a)(4) embezzlement is that Debtor's actions indicated fraud. Such a determination is not synonymous with an intent to defraud as required under § 523(a)(2)(A). And even if it were, § 523(a)(2)(A) does not necessarily require a misrepresentation as Debtor argues. Recently in <u>Husky Int'l Elecs., Inc. v. Ritz</u>, 136 S. Ct. 1581 (2016), the United States Supreme Court clarified that misrepresentation is not an element of actual fraud under § 523(a)(2)(A). That is, actual fraud may include a wider array of misconduct. The record here sufficiently establishes misconduct that falls within the broader definition of actual fraud and even more plainly meets the § 523(a)(4) requirement of indicia of fraud.

The state court, at summary judgment, found that Debtor "admitted in [a] hearing that he personally received 'millions' of dollars from Banana when Banana made 'nothing'" and that his "behavior amounted to a deliberate looting or waste of funds invested by [] Arnold in Banana." And it found, in effect, that Debtor misidentified the Lower $450,000 finder's fee in Banana's records by characterizing it as a consulting fee *and* that he did this to hide the fee's true nature from Arnold.

Then, in its findings of fact and conclusions of law, the state court found (or we can extrapolate that it found) that:

13

- Debtor acted in bad faith in a number of unauthorized transactions between Banana and A-Dot;
- There was no Banana business justification for the unauthorized transactions;
- There were no records justifying the $1,000,000 "consulting fee" from Banana to A-Dot or the $1,160,000 "consulting fee" from Banana to Debtor;
- There were no accruals shown on Banana's financial records for the loans that Debtor caused Banana to make to A-Dot or Lower, Debtor's longtime friend;
- Debtor engaged in several related-party transactions on Banana's behalf without corporate authorization;
- Debtor engaged in self-dealing in a number of the unauthorized transactions;
- Debtor improperly caused Banana to make several payments to himself;
- Debtor used some of the funds from Banana for improper personal expenditures and obligations;
- Debtor breached his fiduciary duties to Banana;
- Debtor never disclosed to Arnold any of the fees, loans, and payments made from Banana, even though Arnold was a 15% shareholder;
- Debtor's attempt to characterize the $1,000,000 payment from Banana to A-Dot as a "licensing fee" was baseless since Debtor had already assigned the intellectual property allegedly licensed to Banana in exchange for stock; and
- Aside from a minuscule amount ($50,000), neither of the two loans totaling $2,585,000, which Debtor caused Banana to

14

make to A-Dot or Lower, were ever repaid and no interest was paid on either loan.

As stated, these findings were affirmed by the Washington court of appeal and are now final. Nothing in the state court's findings suggests that Debtor's acts were a mistake or innocuous. And Debtor's actions were not a one time occurrence; numerous transactions transferred substantial amounts of Banana's money to A-Dot — and then mostly to Debtor — during the time that Arnold invested money in Banana, all without appropriate Banana business justification. These facts indicate fraud and evidence wrongful intent.

Debtor finally contends that "[t]he Bankruptcy Court was forced to admit during oral argument, [that] there were no findings regarding the 'subjective intentions' of [Debtor], specifically such intentions that demonstrated he intended to harm Banana or Arnold." The record shows, however, that the bankruptcy court made this comment when discussing Arnold's § 523(a)(6) claim. Section 523(a)(6) requires willful injury, a subjective intent to injure. Kawaauhau v. Geiger, 523 U.S. 57 (1998) and Petralia v. Jercich (In re Jercich), 238 F.3d 1202 (9th Cir. 2001). There is no authority requiring the same state of mind for § 523(a)(4) embezzlement. Thus, Debtor's reference to Geiger — a § 523(a)(6) case — is inapposite.

Based on the foregoing, granting summary judgment of nondischargeability based on § 523(a)(4) embezzlement is proper.

**CONCLUSION**

For the reasons stated, we AFFIRM.

15